# THE SUPREME COURT

OF THE

STATE OF NEVADA,

APRIL TERM, 1884.

---

[No. 1181.]

## CARTAN, McCARTHY & CO., Respondents, v. EVAN DAVID, et al., Defendants, MRS. LOUISE C. ROBERTS, Appellant.

Married Women—Contracts by—Separate Estate—Security for Husband.—The assignment by a married woman of a note and mortgage upon real estate, the same being her separate property, as collateral security for the payment of her husband's debts, without any . fraud or improper inducements, and with the intention of binding her separate estate, is a valid contract, and is enforceable in equity against her separate estate.

Idem—Intention to Bind Separate Estate—How Expressed.—The intention of Mrs. Roberts to make the debt a charge upon her separate estate does not rest entirely upon parol evidence. It is made manifest by the acts and conduct of the parties, by the exhibits, and by the written indorsement and delivery of her note and mortgage. The contract, as made, is an express charge upon her separate estate for the payment of her husband's debt.

Rights and Liabilities of Married Women.—Married women having, by statute, been granted the right to control their separate property, must assume the risks which ordinarily follow. Having the right to make contracts respecting their separate estates, they must be held liable to the same extent as other citizens.

CONTRACT OF MARRIED WOMEN—STATUTE OF FRAUDS—WHEN NOT APPLICABLE
—CONSIDERATION FOR ASSIGNMENT OF NOTE AND MORTGAGE.—The statute
of frauds has no application to the facts of this case. It was not essential
to the validity of the contract to have the consideration of the indorsement
expressed upon the note, or mortgage in writing. The assignment being
made by the wife for the purpose of securing the note of her husband at
the same time her husband's note was given, and as part of the same
transaction, the consideration for the husband's note will be regarded as
the consideration for the collateral security of the wife, and no new or
additional promise by her is necessary. The transaction must be treated
as an original undertaking on the part of the wife, and cannot be con-
sidered as a mere parol promise to pay the debt of another.

ASSIGNMENT OF NOTE AND MORTGAGE BY MARRIED WOMEN—HOW MADE—
ACKNOWLEDGMENT.—The assignment by a married woman of a note and
mortgage upon real estate, being her separate property, may be made by
merely indorsing her name upon the back of the note. Such note and
mortgage are mere chattels and the assignment thereof is not such a con-
tract respecting her real estate as the statute requires to be acknowledged
separate and apart from her husband.

IDEM—EXECUTED CONTRACT.—When a contract is fully executed on both sides
the rights of the parties become fixed and neither party can interfere with
such rights by pleading the statute of frauds.

APPEAL from the District Court of the Second Judicial
District, Ormsby County.

The facts are stated in the opinion.

*Harris & Bartine* for Appellant :

I. The evidence, in this case, shows that the entire
engagement of Mrs. Roberts was one of surety for the debts
of her husband. Under the laws of this state, the only con-
tracts which a married woman can make are those respect-
ing property. (1 Comp. Laws, 169.)

II. The English equity doctrine which considers a promis-
sory note executed by a married woman a charge upon her
separate estate has no application. Even if it had, the
weight of American authority is against it. (*Wright v.
Brown*, 8 Wright (Penn.) 224 ; *Metcalf v. Cook*, 2 R. I.
355 ; *Leucraft v. Hedden*, 3 Green's Ch. (N. J.) 512 ;
*Perkins v. Elliott*, 23 N. J. Eq. 526 ; *Litton v. Baldwin*, 8
Hump. (Tenn.) 209 ; *Montgomery v. Ag. Bank*, 10 S. & M.
(Miss.) 567 ; *Patterson v. Lawrence*, 90 Ill. 175 ; *Kantro-
witz v. Prather*, 31 Ind. 92 ; *Reed v. Buys*, 44 Mich. 80 ;

*Ewing* v. *Smith*, 3 Des. (S. C.) 417.) In New York, Massachusetts and South Carolina the doctrine is accepted, but with the important qualification that the instrument must expressly charge her estate, and that no other evidence will be admitted to show the intention. ( *Yale* v. *Dederer*, 18 N. Y. 265; Id. 22 N. Y. 450; Id. 68 N. Y. 329; *Gosman* v. *Cruger*, 69 N. Y. 87; *Willard* v. *Eastham*, 15 Gray 328; *Knox* v. *Jordan*, 5 Jones' Eq. (N. C.) 175. See, also, *Levi* v. *Earl*, 30 Oh. St. 147; *Rice* v. *Railroad*, 32 Id. 380.)

III. Where the estate is statutory and legal, the statute governs, and courts of equity have no right to disregard its provisions. ( *Wilkinson* v. *Cheatham*, 45 Ala. 338; *Nunns* v. *Givhans*, 45 Ala. 374; *O'Connor* v. *Chamberlain*, 59 Ala. 431; *Meyers* v. *Rahte*, 46 Wis. 658; *Maclay* v. *Love*, 25 Cal. 367; *Dollner* v. *Snow*, 16 Fla. 86; *Sweazy* v. *Kammer*, 51 Iowa 642; *West* v. *Laraway*, 28 Mich. 464.)

IV. A promissory note is not *per se* a contract respecting property. It depends upon the nature of the transaction in which it is executed. Standing by itself it is merely a personal promise, and in no case can an undertaking of suretyship, as evidenced by the signing of a promissory note, be a contract respecting property. (*Sweazy* v. *Kammer*, 51 Iowa 642; *Jones* v. *Crosthwaite*, 17 Iowa 393; *Wolf* v. *Van Metre*, 23 Iowa 397; *Reed* v. *Buys*, 44 Mich. 80; *Russel* v. *People's Savings Bank*, 39 Mich. 671; *De Vries* v. *Conklin*, 22 Mich. 256; *West* v. *Laraway*, 28 Mich. 465; *Ames* v. *Foster*, 42 N. H. 382; *Shannon* v. *Canney*, 44 N. H. 592; *Brookings* v. *White*, 49 Me. 482; *Willard* v. *Eastham*, 15 Gray 328; *Athol Machine Co.* v. *Fuller*, 107 Mass. 437; *Hoker* v. *Boggs*, 63 Ill. 161; *Coats* v. *McKee*, 26 Ind. 223; *Savings Bank* v. *Scott*, 10 Neb. 83; Id. 371; *Smith* v. *Greer*, 31 Cal. 478.)

V. The alleged assignment of the David note and mortgage was an undertaking in substance by Mrs. Roberts to answer for the debt of her husband, and is within the statute of frauds. (Brandt on Sureties, secs. 22, 60, 66; *Spear* v. *Ward*, 20 Cal. 659; Brown on Stat. of F. 173, 174, 346; *Mayer* v. *Adrian*, 77 N. C. 83; *Washington Ice Co.* v.

*Webster*, 62 Me. 341; *Baptist Ch.* v. *Bigelow*, 16 Wend.
28; *Williams* v. *Morris*, 95 U. S. 444; *Pierce* v. *Corf*, Law
R. 9 Q. B. 210.)   It is necessary that all the substantial
matter of agreement shall be connected with the signature
of the party to be charged.   The law admits of nothing by
way of substitute for the actual signature.   (1 Comp. Laws,
289; Brown on the Stat. of F. sec. 363; *Barry* v. *Law*, 1
Cranch C. C. 77; *Newby* v. *Rogers*, 40 Ind. 9; *Groover* v.
*Warfield*, 50 Ga. 644; *Graham* v. *Musson*, 5 Bing. N.
C. 243; *Graham* v. *Fretwell*, 3 M. & G. 368; *Van Doren* v.
*Tjader*, 1 Nev. 380; *Wilson* v. *Martin*, 74 Pa. St. 159.)

*Trenmor Coffin*, for Respondents:

I. If Mrs. Roberts had been a *feme sole*, she could have
pledged her personal property to secure the promissory
note of another by the delivery of her personal property to
the payee of the note at the time of its execution, or
she could have assigned a note and mortgage held by her
as collateral security for the debt of another.   The debt of
the person to whom the security was given would be a
sufficient consideration to support the assignment.   (*Gibson*
v. *Milne*, 1 Nev. 526; *Lawrence* v. *Knap*, 1 Root 248;
*Kansas M. Co.* v. *Gandy*, 11 Neb. 448; 1 Jones on Mortg.,
secs. 615, 778; *Worcester National Bank* v. *Cheeney*, 87 Ill.
607; *Davidson* v. *King*, 51 Ind. 224; *Moore* v. *Fuller*, 6
Or. 272; Baylies on Sur. and Guar., 53, 58; Brandt on
Sur. and Guar., secs. 6, 7, 8.)

II. When a married woman signs a promissory note and
has separate property, her husband cuts no figure in the
same.   A suit may be maintained on the note, a judg-
ment obtained and her property taken in execution, the
same as in the case of an unmarried woman or of a man.
Her separate property may be subject to the payment of
her promissory note, or the joint note of her and her hus-
band, especially when credit was given upon the faith of
her separate property, or where she understood or intended
that her separate property should be liable for the satis-
faction of the note.   (*Williams* v. *Urmston*, 35 Ohio St.

296 ; *Phillips* ·v. *Graves*, 20 Ohio St. 371 ; *Avery* v. *Van-sickle*, 35 Ohio St. 270 ; *Kimm* v. *Weippert*, 46 Mo. 532 ; *Miller* v. *Brown*, 47 Mo. 504 ; *Metropolitan Bank* v. *Taylor*, 62 Mo. 338 ; *Deering* v. *Boyle*, 8 Kan. 525 ; *Bell* v. *Kellar*, 13 B. Monroe 381 ; *Cowles* v. *Morgan*, 34 Ala. 535 ; *Burnett* v. *Hawpes*, 25 Grat. 481 ; *Radford* v. *Carwile*, 13 W. Va. 572 ; *Moore* v. *Fuller*, 6 Or. 274 ; *Gray* v. *Holland*, 9 Or. 512 ; *Dyett* v. *North American Coal Co.*, 20 Wend. 570 ; *Martin* v. *Dwelley*, 6 Wend. 9 ; *Jaques* v. *Methodist Church*, 17 Johns. 549 ; *Vanderheyden* v. *Mallory*, 1 N. Y. 452 ; *Corn Exchange* v. *Babcock*, 42 N. Y. 613 ; *McVey* v. *Cantrell*, 70 N. Y. 295 ; *Tiemeyer* v. *Turnquist*, 85 N. Y. 516 ; *Merchant's Bank* v. *Hall*, 83 N. Y. 338; *Emerson* v. *Clayton*, 32 Ill. 496 ; *Pomeroy* v. *Man. Ins. Co.*, 40 Ill. 399, 402 ; *Williams* v. *Hugunin*, 69 Ill. 214 ; *Elliott* v. *Gower*, 12 R. I. 79 ; *Davis* v. *Bank of Cheyenne*, 5 Neb., 242 ; *Kansas Manf. Co.* v. *Gandy*, 11 Neb. 448 ; *Priest* v. *Cone*, 51 Vt. 495 ; *Collins* v. *Dawley*, 4 Col. 138 ; *Porter* v. *Haley*, 55 Miss. 66 ; *Wright* v. *Remington*, 12 Vroom 48 ; *Todd* v. *Lee*, 15 Wis. 380 ; *Krouskop* v. *Shontz*, 51 Wis. 204 ; *Pelzer* v. *Campbell*, 15 S. C. 581 ; *Slaughter* v. *Glenn*, 98 U. S. 242 ; *Smith* v. *Thompson*, 2 McArthur (D. C.) 291 ; *Dallas* v. *Heard*, 32 Ga. 604 ; *American Ins. Co.* v. *Avery*, 60 Ind. 570 ; *Frazier* v. *Brownlow*, 3 Ired. Eq. (N. C.) 237 ; *Newlin* v. *Freeman*, 4 Ired. Eq. 312 ; *Allen* v. *Fuller*, 118 Mass. 402 ; *Nourse* v. *Henshaw*, 123 Mass. 96 ; *Major* v. *Holmes*, 124 Mass. 108; *Gardner* v. *Bean*, 124 Mass. 347 ; *Kenworthy* v. *Sawyer*, 125 Mass. 28 ; *Goodnow* v. *Hill*, 125 Mass. 587 ; *Wood* v. *Orford*, 52 Cal. 412 ; *Parry* v. *Kelly*, 52 Cal. 334 ; *Marlow* v. *Barlew*, 53 Cal. 456 ; *Alexander* v. *Bouton*, 55 Cal. 15 ; *Brickell·* v. *Batchelder*, 62 Cal. 639 ; *Orange Bank* v. *Traver*, 7 Saw. 211; *Allers* v. *Forbes*, 59 Md. 374 ; 1 Bish. Mar. Wom., secs. 848, 858, 864, 879.)

III. When plaintiffs satisfied their judgment against Oliver Roberts, and Roberts and wife joined in the execution of a promissory note therefor, it was was an original undertaking on the part of Mrs. Roberts and not within the statute of frauds, plaintiffs having satisfied the judgment

and parted with their goods on the faith and credit of Mrs. Roberts and of her separate property. (*Corbett* v. *Cochran*, 3 Hill (S. C.) 42; *Underhill* v. *Gibson*, 2 N. H. 352; *Dearborn* v. *Parks*, 5 Greenleaf, 81; *Harrison* v. *Sawtelle*, 10 Johns, 242; *Marcy* v. *Crawford*, 16 Conn. 549; *Green* v. *Brookins*, 23 Mich. 48; *Vogel* v. *Melms*, 31 Wis. 306; *Calkins* v. *Chandler*, 36 Mich. 320; *Happe* v. *Stout*, 2 Cal. 460; *Riggs* v. *Waldo*, 2 Cal. 485; *Evoy* v. *Tewksbury*, 5 Cal. 285; *Jones* v. *Post*, 6 Cal. 102; *Hazeltine* v. *Larco*, 7 Cal. 32; *Otis* v. *Hazeltine*, 27 Cal. 80; *Gradwohl* v. *Harris*, 29 Cal. 151; *Ford* v. *Hendricks*, 34 Cal. 675; *Howland* v. *Aitch*, 38 Cal. 133; *Emerson* v. *Slater*, 22 How. 28.)

IV. Even if the transaction could be construed in any phase of it to be within the statute of frauds, it was on that day completed, and the contract of satisfying the judgment and of the delivery of the goods by plaintiff, and of giving collateral security by defendant, Mrs. Roberts, was on that day fully executed. An execution of a contract and change of possession of property takes a contract or transaction out of the statute. (*Stone* v. *Denison*, 13 Pick. 1; *Martin* v. *McCord*, 5 Watts 493; *Linscott* v. *McIntire*, 15 Me. 201; *Dugan* v. *Gittings*, 3 Gill 138; *Robbins* v. *McKnight*, 1 Hals. Ch. 642; *Green* v. *Brookins*, 23 Mich. 48; *Lee* v. *McLeod*, 12 Nev. 280; *Evans* v. *Lee*, 12 Nev. 393.)

V. The mortgage is a mere incident and follows the debt. (*Lawrence* v. *Knap*, 1 Root 248; *Runyan* v. *Mersereau*, 11 Johns 534; *Sheldon* v. *Sill*, 8 How. (U. S.) 450; *Carpenter* v. *Longan*, 16 Wal. 274, 275; *Fryer* v. *Rockefeller*, 63 N. Y. 276; *Ord* v. *Mckee*, 5 Cal. 517; *Nagle* v. *Macy*, 9 Cal. 428; *Willis* v. *Farley*, 24 Cal. 498; *Hurt* v. *Wilson*, 38 Cal. 264; *Mack* v. *Wetzler*, 39 Cal. 247; *Burling* v. *Goodman*, 1 Nev. 317; *Burhams* v. *Hutchinson*, 25 Kan. 625.)

By the Court, HAWLEY, C. J.:

On the thirteenth of June, 1881, Oliver Roberts and his wife, Louise C. Roberts, made, executed and delivered to respondents a promissory note for nine hundred dollars.

The consideration of this note was the satisfaction by respondents of a judgment previously obtained against Oliver Roberts for the sum of eight hundred dollars, and the sale by them of a certain stock of liquors, saloon fixtures and supplies, valued at one thousand dollars, to Mrs. Roberts.    As collateral security for the payment of the note, Mrs. Roberts indorsed and delivered to respondents a note for five thousand dollars, secured by a mortgage upon certain real estate in Carson City, Nevada, this note and mortgage being her separate property.    This action was commenced to foreclose said note and mortgage and to subject the proceeds of the sale of the mortgaged premises to the satisfaction of the nine-hundred-dollar note.    At the close of plaintiffs' testimony the defendants moved for a nonsuit upon the grounds:

"That the evidence for the plaintiffs shows conclusively that the whole transaction, on the part of Mrs. Roberts, was simply one in which she undertook to become a surety for the antecedent debt of her husband, Oliver Roberts, and that said undertaking on her part is not evidenced by any note or memorandum in writing, expressing the consideration for the undertaking, as is required by the statute of frauds."

This motion was overruled, and the trial resulted in a judgment in favor of respondents.    Mrs. Roberts alone appeals.

Can the contract of Mrs. Roberts be enforced under the laws of this state?    The general legal doctrine that the civil existence of the wife is merged into the legal life of the husband, and divests her of all power to hold property in her own individual right, resulted in England in the establishment of certain equity rules which invested her with power to enjoy and hold a separate estate, and to alienate it.    The question then arose as to the nature and extent of her authority over it.

The leading case of *Hulme* v. *Tenant*, 1 Brown Ch. 16, was brought by the obligee upon a joint bond by husband and wife to recover a sum of money out of the separate

property of the wife. Lord Thurlow, in rendering his opinion, said :

" I have no doubt about this principle, that, if a court of equity says a *feme covert* may have a separate estate, the court will bind her to the whole extent as to making that estate liable to her own engagements, as, for instance, for payment of debts," etc.

The rule in England is well settled that a *feme covert* is to be regarded in equity as a *feme sole* with respect to her separate estate, with power to dispose of it as she pleases, unless specially restrained by the instrument under which she acquires the estate. She is, by the settlement of such separate property to her use, clothed with the absolute *jus disponendi* incident to ownership.

In the United States there is no settled rule upon this subject. No question has ever been presented to the courts of this country which has brought out such a conflict of opinion among the ablest and most distinguished jurists of the land.

In *Ewing* v. *Smith*, 3 Desaus. Eq. (S. C.) 418, Chancellor Desaussure, in tracing the doctrine from its first appearance in the courts of equity to the year 1811, said :

" By the simple rules of the common law, the union of man and wife was deemed so complete that there was a junction of persons, minds, and fortunes. The wife's existence was absorbed in the husband's, and he, adopting her and her debts, and assuming to maintain and provide for her, became entitled to all her personal estate absolutely, and to the enjoyment of all her real estate for life. When, in the progress and refinement of commerce, corruption came with them, and also great hazards to fortune from the spirit of adventure, the caution and providence of parents endeavored to guard against casualities by giving property to their daughters as a separate estate, not liable to the debts of her husband. This at once dissolved the charm which bound up the fortunes and wills of the man and wife in one common bond of interest and affection. It was the introduction of a principle familiar to the civil law, but new

to English law, that man and wife were distinct persons, with distinct properties, and distinct powers over them.　A separate estate, free from the control of the husband, and subject to the will of the wife, made her a free agent *quoad* that property, and she could act upon it as a *feme sole.* But it was soon found that wives, however legally free, were much under the control of their husbands, and too readily yielded up their separate estates to them by direct gifts, or by engagements to their creditors.　This induced some of the judges to interpose and to endeavor to control the free exercise of this power of free agency, which the character of a *feme sole,* as to the separate estate, bestowed.　But, upon the fullest consideration, it has been found that upon the introduction of the principle that *femes covert* could hold separate estates, free from the control of their husbands, the *jus disponendi,* and all the other consequences of the holding separate estates necessarily followed, and after an ineffectual struggle the doctrine seems to have settled down where it was originally placed by the court.　The result, then, is that a *feme covert* entitled to a separate estate, in possession, remainder or reversion, is held to be a *feme sole* to the extent of the separate property, and the *jus dispo-* *nendi* follows, of course.　She may give it to whom she pleases, or charge it with the debts of her husband, where no undue control is used over her, and her disposition will be sanctioned or enforced by the court, even without the assent of the trustees, unless that assent be specially made necessary by the deed or will creating the separate estate; and this power of disposing of the separate estate is not restricted by the deed or will pointing out a particular mode of disposing or charging the particular estate, unless the deed or will negatives any other mode expressly.　Upon the fullest and most attentive examination of the cases, I think these doctrines are clearly made out and established.''

This able opinion of the learned chancellor was, however, reversed in the court of appeals by a majority of the chancellors, and the courts of that state for many years thereafter maintained the doctrine that the wife was, as to her

separate estate, under the disabilities of coverture, and entitled to exercise no rights, except such as were expressly conferred on her by the instrument creating the estate. In 1870 the legislature passed a law which authorized a married woman to "convey her separate property in the same manner and to the same extent, as if she were unmarried," and under this statute the courts have held that the personal contracts of a married woman are binding upon her.

In New York the subject has undergone very able and profound discussion. Chancellor Kent, in *Methodist Episcopal Church* v. *Jaques*, 3 Johns. Ch. 78, (decided in 1817,) in an elaborate opinion, reviewing many of the English cases, came to the conclusion "with unfeigned diffidence, considering how great talents and learning, by a succession of distinguished men, have been exhausted upon the subject, that the English decisions are so floating and contradictory as to leave us the liberty of adopting the true principle of these settlements. Instead of holding that the wife is a *feme sole* to all intents and purposes as to her separate property, she ought only to be deemed a *feme sole, sub modo*, or to the extent of the power clearly given by the settlement. Instead of maintaining that she has an absolute power of disposition, unless specially restrained by the instrument, the converse of the proposition would be more correct, that she has no power but what is specially given, and to be exercised only in the mode prescribed, if any such there be. Her incapacity is general, and the exception is to be taken strictly, and to be shown in every case, because it is against the general policy and immemorial doctrine of law. These very settlements are intended to protect her weakness against her husband's power, and her maintenance against his dissipation. It is a protection which this court allows her to assume, or her friends to give, and it ought not to be rendered illusory."

As in South Carolina, the decision of Chancellor Desaussure, maintaining the correctness of the English rule, was reversed by a majority of the chancellors in the court of appeals; so in New York the decision of Chancellor Kent,

condemning the English rule and departing from it, was reversed in the court of errors; likewise by a divided court. Spencer, C. J., in delivering the opinion of the court, said:

"I have examined this case with the unfeigned respect which I always feel for the learned chancellor who has denied the right of Mrs. Jaques to dispose of her estate without the consent or concurrence of her trustee, and I am compelled to dissent from his opinion and conclusions. From the year 1740 until 1793 (with the single exception of the opinion of Lord Bathurst, in *Hulme* v. *Tenant,* which occurred in 1778, and in which case a rehearing was granted by Lord Thurlow and the opinion reversed), there is an unbroken current of decisions that a *feme covert,* with respect to her separate estate, is to be regarded in a court of equity as a *feme sole,* and may dispose of her property without the consent or concurrence of her trustee, unless she is specially restrained by the instrument under which she acquires her separate estate.   *   *   *   The mistake into which I think the chancellor has fallen consists in considering Mrs. Jaques restrained from disposing of her estate in any other way than that mentioned in the deed of settlement. The cases, in my apprehension, are clearly opposed to this distinction; and I am entirely satisfied that the established rule in equity is that when a *feme covert,* having separate property, enters into an agreement, and sufficiently indicates her intention to affect by it her separate estate, when there is no fraud or unfair advantage taken of her, a court of equity will apply it to the satisfaction of such an engagement. (*Jaques* v. *M. E. Church,* 17 Johns 577.)

After the statutes of 1848 and 1849, which gave the right to married women to acquire and hold in actual possession and enjoyment a separate legal estate in lands or personal property, the principles controlling the courts of that state were moulded into positive form by the decision of the court of appeals in *Yale* v. *Dederer,* 18 N. Y. 265. This case involved the question of the power of a married woman to charge her separate estate, either under the statute or

independently of it, by executing a joint promissory note with her husband. Comstock, J., in delivering the opinion of the court, gives as clear and able exposition of the subject as is to be found in any of the decided cases which modify the rules as established in England. He said:

"Until the change which has been mentioned was made by the legislature in the law of trusts, there was a well-settled doctrine that a married woman could deal with her separate estate as though she were *feme sole.* But this doctrine was a pure creation of the courts of equity. Trusts for the separate use of married women were a marked, although a beneficial, innovation upon the rules of the common law. But when the courts of equity sustained their validity, and recognized the wife's estate under them, it seemed to be a necessary result that she should have the power of disposition; and, accordingly, the power was conceded. * * * But the separate estates, upon which the courts of equity ingrafted these peculiar doctrines, included, necessarily, only such rights and interests of the wife as would belong to the husband but for the limitation to her particular use. * * * But her own reversion in lands, when she owned them at the time of her marriage, was a legal estate descendible to her heirs, to which courts of equity did not and could not well apply the doctrines which have been stated. * * * The principle, in short, which now governs in cases of this kind, is that a wife's separate estate is liable to pay her debts during coverture, in whatever form they are incurred; not because her contracts have any validity at law, nor by way of appointment or charge, but because equity decrees it to be just that they should be paid out of such estate. Of course, it is not to be denied that a wife may appoint or specifically appropriate her separate estate to the payment of her own or her husband's debts. She may, if she pleases, even give it to her husband. What I am denying is that contracting the debt is, of itself, an appointment or charge.

"Can, then, the principle on which the liability depends be extended to cases of mere suretyship for the husband

or a stranger? It seems to me it cannot. The obligation of a surety, in all other cases, is held to be *stricti juris*; and if this contract is void at law, there is no liability in equity founded on the consideration between the principal parties.   *   *   *   Why should a married woman be made an exception to this rule? We are to remember that her contract is absolutely void at law, and, when she is a mere surety, there is no equity springing out of the consideration. If the promise is on her own account, if she or her separate estate receive a benefit, equity will lay hold of those circumstances, and compel her property to respond to the engagement. Where these grounds of liability do not exist, there is no principle on which her estate can be made answerable. If we hold that the signing of a note as surety brings a charge upon her estate, we must go further, and hold, also, that her guaranty, her indorsement, her accommodation acceptance, her bail-bond, indeed, every conceivable instrument which she may be persuaded to sign, for her husband or others, although absolutely void at law, are so far binding in equity as to charge her property with its payment. This would be a doctrine sustained by no analogies, and opposed to the soundest policy. It would go far to withdraw those checks which are intended to preserve a wife from marital influences, which may be, and often are, unduly exerted, and yet baffle all detection. The doctrine that equity regards her as a *feme sole*, in respect to her separate estate, only admits that she may dispose of such estate with or without consent of her husband, and without the solemnities which the law in other cases requires. But her mere promise to pay money, as we have seen, is not of itself such a disposition. Courts of equity, proceeding *in rem*, will take hold of her estate, and appropriate it to the payment of her debts; but when her obligation is one of suretyship merely, she owes no debt at law or in equity. If not at law, which is very clear, then quite as clearly not in equity.''

When this case again came before the court, a majority

of the justices concurred in the opinion that the intention to charge the separate estate must be stated in the contract itself, or the consideration must be one going to the direct benefit of the estate. (*Yale* v. *Dederer*, 22 N. Y. 461.)

The case for the third time came before the court, when the same views were maintained, but Church, C. J., in delivering the opinion of the court, said : " It is impossible to distinguish the case in its legal aspects from what it was when last before this court, and the decision then made must stand as the law of the case. It is *res adjudicata* between these parties. In the case of *Manhattan B. & M. Co.* v. *Thompson*, 58 N. Y. 80, in delivering the opinion of the court, I intimated a regret that the rule had not been established differently, so that, since married women are allowed by statute to take, hold, manage and dispose of property as fully and completely as if they were unmarried, the signing of a note or obligation should be deemed sufficient evidence of an intention to charge their separate estates : and further reflection and examination have confirmed the impression then expressed; but I then thought that the rule had been too long established as the law of the state to justify this court in overruling it, and I am still of that opinion." (*Yale* v. *Dederer*, 68 N. Y. 335.)

And here we meet with another singular feature to be found in the adjudicated cases. As in New York, the decisions modifying the English rule are upheld in the latter cases upon the ground of *stare decisis*, and with regrets that the rule had been so modified; so, in Virginia, Missouri, and Alabama, where the courts for several years adhered to the English rule, claiming it to be founded on reason and authority, the later decisions are based upon the doctrine of *stare decisis*, and the justices express regrets that the rule had not been otherwise established. (*Burnett* v. *Hawpe*, 25 Grat. 493; *Metropolitan Bank* v. *Taylor*, 62 Mo. 340; *Nunn* v. *Givhan*, 45 Ala. 375.)

In Ohio the courts refused to be bound by the doctrine of *stare decisis*. In *Levi* v. *Earl*, 30 Ohio St. 147, the justices of the supreme court unanimously came to the conclusion,

after an able and exhaustive review of the subject, that the indorsement by a married woman of a promissory note, solely for the accommodation of her husband, and as surety thereon, in order to enable him to dispose of the same, is not, of itself, sufficient to warrant a court of equity in presuming that she intended to charge her separate real estate with the payment of the same. In *Williams* v. *Urmston,* 35 Ohio St, 301, the case of *Levi* v. *Earl* was overruled upon the ground that the conclusion reached therein was not only against the weight of authority, but was founded on a misconception of the principles upon which some of the cases reviewed in the opinion proceed, and the court declared the law to be that a married woman, having a separate estate, may charge the same in equity, by the execution of a promissory note as surety for her husband, or another, and when she does so execute a note, the presumption arises that she thereby intends to charge her separate estate with its payment, and this opinion met with the unanimous concurrence of all the justices.

The authorities we have referred to and quoted from, sufficiently indicate the reasons which have been given for the respective decisions. In the light of the adjudicated cases we can readily see that the "attempt to point out doctrines held in particular states becomes wearisome and unsatisfactory," and that an effort to do so would, perhaps, justify the remark made by Mr. Bishop, that "it is impossible for the author to know whether any doctrine he may set down in the text will be held by any court hereafter." (1 Bishop Mar. Wom. sec. 869.)

The separate estates of *femes covert,* in most of the states, are not mere creatures of equity, but are legal estates ; hence it has been held that their rights over their separate property must be controlled solely by the statute. But the respective courts are not harmonious with reference to the construction to be given to the provisions of the statute. There is, substantially, the same diversity of opinion in regard thereto as is to be found in the general discussion in relation to the rules of equity. The question at issue has

never been adjudicated in this state. We are therefore at liberty, and it is our duty, to decide it in accordance with our own sense of justice, and our own ideas as to the proper construction of the statute of this state, unfettered by the doctrine of *stare decisis*, and independent of the views enunciated by the courts of other states. "In the midst of such a conflict of opinions, it is clear that we are left to the determination of it upon what may appear to be sound principles of equity." (*Leaycraft* v. *Hedden*, 4 N. J. Eq. 550; *Perkins* v. *Elliott*, 23 N. J. Eq. 531.)

Our statute provides that "the wife may, without the consent of her husband, convey, charge, incumber, or otherwise, in any manner, dispose of her separate property." (1 Comp. Laws, 159.) "Either husband or wife may enter into any contract, engagement, or transaction with the other, or with any other person, respecting property, which either might enter into if unmarried." (Id. 169.)

As there are so many distinctions made with reference to the general rules, our decision will be based upon the particular facts of this case. It must, therefore, be remembered that we are not called upon to decide whether Mrs. Roberts' separate estate would have been bound for the payment of the nine hundred dollar note by the mere fact of her signing the same as surety for her husband. In determining the effect of her contract, the entire transaction must be considered. Respondents declined to make any settlement with Oliver Roberts unless they were secured. They offered favorable terms if proper security was given. The court found, and the evidence justifies the finding, that respondents entered into and completed the entire transaction upon the faith and credit of the execution of the nine hundred dollar note by Mrs. Roberts, and upon the faith and credit of her separate property pledged for the payment of said note. The court also found that the sale of the goods was made to Mrs. Roberts, and that she joined in the execution of the nine hundred dollar note for the purchase price thereof, and gave the security of her

separate estate for the payment of said note. If the sale was really made to her and for her benefit, then her authority to bind herself is unquestionable. "The rule, of necessity, must be universal that in all cases where the act of the *feme* ensues directly to her own benefit, and she expressly or by implication, binds her estate, a court of equity will enforce such obligation." (*Perkins* v. *Elliott*, 23 N. J. Eq. 535.)

This principle is explicitly recognized in many of the authorities cited by appellant, and if this finding is to control, as claimed by respondents, it is conclusive in favor of their right to recover. There are, however, some grounds for contention, if the evidence is subject to review, as to whether the sale of the stock of liquors and saloon fixtures was made to Mrs. Roberts, or for her benefit. With the views we entertain of this case, it will be considered, for the sake of the argument, that the insertion of the name of Mrs. Roberts in the bill of sale was an afterthought, or that her name was used for the purpose of shielding the property from her husband's debts, and that the sale was, in reality, made to the husband, and that the contract of the parties was for his sole benefit. The fact still remains, as the evidence shows, that it was the intention of Mrs. Roberts, without any fraud or improper inducement upon the part of her husband or of the respondents, that her separate property should be bound for the payment of the nine hundred dollar note. She was represented by counsel, and all the facts were stated and discussed in her presence. She understood the nature of the business, and was careful enough to secure and protect the rights of her children to one-half of the five thousand dollar note. Her act in freely and voluntarily indorsing this note and delivering it, with the mortgage, to the respondents, with a full knowledge of all the facts, is conclusive evidence of her intention to make the contract binding upon her separate estate. The contract does not rest entirely upon parol evidence. The intent to make the debt a charge upon her separate estate is made manifest by the acts and conduct of the parties, by the

exhibits, by the written indorsement, and by the delivery of the five thousand dollar note and mortgage. We are, therefore, of opinion that the contract is entitled to as much force and effect as if Mrs. Roberts had, in writing, expressly stated in direct terms that she indorsed the note for the purpose of binding her separate estate, in consideration of the satisfaction of the judgment against her husband, and of the sale of the saloon fixtures to him, as collateral security for the payment of the nine hundred dollar note. This conclusion brings the case within the rules announced in several of the authorities cited by appellant, and by all the authorities cited by respondents, as authorizing recovery against the wife's separate estate.

In *Yale* v. *Dederer*, 18 N. Y. 281, the court said : "Thus it appears that there are two modes in which the separate estate of a married woman may be charged with the payment of her pecuniary engagement,—the *one*, where she has, in terms and by an appropriate instrument, made such charge ; and the *other*, where, though she has not, in making the contract, referred to her separate estate, or expressed her intention to satisfy it out of such estate ; yet the circumstances of the case are such as to leave no reasonable doubt that such was her intention."

In discussing the evidence touching the intention of the wife in assigning her separate estate to secure the payments of demands against her husband, Folger, C. J., in delivering the opinion of the court in *Merchants' Bank* v. *Hall*, said : "It may be that the defendant had not precise knowledge of the facts as they then existed; yet it is to be inferred that she had a general understanding of the state of affairs, and that she executed the assignment in view of them. * * * And it is to be presumed that the assignment was obtained from her fairly, and in view of the condition of affairs then existing. She is bound, therefore, by such a construction of her agreement as arises fairly from the circumstances in which it was used by her authority." (83 N. Y. 347.)

Deady, J., in delivering the opinion in *Orange National*

*Bank* v. *Traver,* said : "There is no set form of words nec-
essary to manifest the wife's intention to create the charge
upon her estate.   It is sufficient if it fairly appears from the
language used, under the circumstances, that such was her
intention.   She gave this obligation to pay her husband's
debt, with the express understanding that it was accepted
by the creditor upon the credit of her separate estate, and
the only inference from this fact compatible with her honesty
is that she so intended it.   This undertaking may have been
an unwise one on her part.   But where the law gives the
wife power to contract as a *feme sole,* it will hold her to a
like obligation to perform, regardless of the consequences to
herself or her estate."   (7 Sawy. 216.)

If Mrs. Roberts had been the owner of the real estate
upon which her mortgage was given, she could certainly
have executed a mortgage upon it for the purpose of secur-
ing the payment of her husband's debt.   ( *Wolff* v. *Van
Metre,* 23 Iowa 397 ; *Brookings* v. *White,* 49 Me. 483 ;
*Moore* v. *Fuller,* 6 Or. 273 ; *Alexander* v. *Bouton,* 55
Cal. 15.)

Does not her contract, in indorsing the note secured by
mortgage, stand upon the same plane ?   Is not her intention
to bind her separate estate made manifest, in either case,
by the contract itself ?   Is not the contract an express
charge upon her separate estate for the payment of her
husband's debt ?   Does not the contract come within the
meaning of the statute authorizing a married woman to enter
into "any contract, engagement, or transaction   *   *   *
respecting property ?"   These words, in our opinion, are—
as has been held by the supreme court of California—" suf-
ficiently comprehensive to include a promissory note or
mortgage."   (*Marlow* v. *Barlew,* 53 Cal. 459.)

It has ever been the rule of courts of equity to guard
with jealous care the rights of the wife, in contracts of this
character, in order to protect her from undue and improper
influences on the part of her husband, or others with whom
she deals.   This rule should always be strictly adhered to,
but beyond this courts are not, and should not, be required

to go. The question of the right and power of the wife to dispose of her separate estate in any manner she pleases, is, and should be, left solely with her as a free agent. She has, under the provisions of the statute, the absolute and unlimited control over it. She can keep it, where the law places it, secure from her husband's debts; or she can, of her own free will, release it from the protection given by the law and use it for the purpose of paying her husband's debts. She may, if she so pleases, give it to him to be squandered away in any business or speculation in which he may engage; and if she does so, without any fraud or undue influence, courts of equity will not relieve her from the obligations of her contracts.

Married women should remember that their legal position is different from what it was many years ago. Their property rights are no longer merged in the husband. With advancing civilization the wisdom of legislative bodies has been gradually bestowing upon them greater privileges, and has virtually emancipated them from the slavery of the law as it existed ages ago. Our statute endows married women with all the faculties and rights of a human being. They should, therefore, keep constantly in mind that with every enlargement of their rights there will necessarily come an increase of their responsibilities. Having asked, and been granted, the right to control their separate property, they must assume the risks which ordinarily follow. Having been given the right to make contracts respecting their separate estates, they should not complain if they are held liable to the same extent as other citizens.

We are of opinion that the question in relation to the statute of frauds has no application to the facts of this case. It was not essential to the validity of the contract to have the consideration for the indorsement expressed upon the note, or other instrument, in writing. There was a good and valuable consideration for the nine hundred dollar note. The indorsement of the five thousand dollar note by Mrs. Roberts, and her delivery of it, together with the mortgage, to respondents as collateral security for the payment of the

nine hundred dollar note occurred, as we have before stated, at the same time. It was one entire transaction. The consideration for the contract of Oliver Roberts to pay the nine hundred dollar note must, therefore, be regarded as a consideration for the collateral security given by Mrs. Roberts, and no new or additional promise was necessary. The transaction must be treated as an original undertaking on the part of Mrs. Roberts, and cannot be considered as a mere simple parol promise to pay the debt of another.

" To support a mortgage made for the accommodation of another, there must be a consideration. If the debt of the other person which is thus secured by the mortgage be already incurred, there must be a new and distinct consideration for the obligation incurred by the mortgageor as surety or grantor of that debt. But if the debt secured be incurred at the same time that the mortgage is given, and this collateral undertaking enters into the inducement to the creditor for giving the credit, then the consideration for such contract is regarded as consideration also for the collateral undertaking by way of mortgage." (1 Jones, Mortg. sec. 615.)

It is well settled that no new consideration is necessary to support a guaranty of a note given at the time of its execution, and so made a part of the original transaction, as the credit given to the principal debtor forms the consideration for the guaranty. This doctrine is equally applicable to contracts of suretyship. (Baylies, Sur. 54.)

Moreover, the contract in this case was fully executed on both sides. The rights of the parties became fixed, and neither party can interfere with them by pleading the statute of frauds. (See authorities cited by respondents.)

The other objections urged by appellant are untenable.

The indorsement on the back of the five thousand dollar note was sufficient to pass the title of the note and mortgage. Mrs. Roberts did not own the real estate, hence the indorsement of the note and assignment of the mortgage was not a contract respecting her real estate, and was not such a contract as the statute requires to be acknowledged

separate and apart from her husband.    The note and mortgage were mere chattels, and passed by the indorsement on the note and by the delivery of the note and mortgage by Mrs. Roberts to respondents.    No question in relation to the rights of Jacob Muller in the note and mortgage assigned by Mrs. Roberts to respondents can be considered.    He has not appealed, and he is therefore bound by the judgment.

It follows, from the reasons we have stated, and the conclusions reached, that the court did not err in refusing defendant's motion for a nonsuit, or in rendering judgment in favor of respondents.

The judgment of the district court is affirmed.