Nellie Ashley
vs.                           No. 10666.
Arthur A. Mitchell, et al.

June 23, 1932.

CHURCHILL, J. Heard on bill, answers and proof.

The object of the bill is to set aside the transfer of two parcels of land. The transfer was made by the complainant to the respondent on July 12, 1924, and embraced land on Ingraham street in the town of East Providence and a parcel located in the same town and known as the Pine Crest property.

The Pine Crest property came to the complainant under a deed from James W. Rodman executed April 6, 1923, and recorded May 1, 1923.

The Ingraham street property, at the time of the conveyance to Mitchell, was burdened with a mortgage for $700. Mitchell, after taking title, gave a second mortgage on the property for $1,000 to the respondent Phebe E. Wilbur. This mortgage was dated December 20, 1926.

The first mortgage was foreclosed on January 24, 1926. Less than the amount due thereon was realized. Phebe E. Wilbur, the second mortgagee, thereupon brought suit against Mitchell on the mortgage note and attached the Pine Crest property. The attachment was filed for record later than the date of the lis pendens filed in the instant case. The suit on the note went to judgment and execution against Mitchell. The respondent Wilbur bought in the property for the amount of the execution and took title under a sheriff's deed.

Shortly stated, the claim for equitable relief, on the part of Nellie Ashley, is that Mitchell, a professional bondsman, had induced the complainant to become surety on several bail bonds; that he stated to complainant, at the time of the transfer of the two parcels of land, that several defendants had absconded, that it was advisable for her to convey the property to him and that he would reconvey to her at her request.

Mitchell set up in his answer that he paid a valuable consideration in cash at the time or prior to the execution of the deed of conveyance. The defense relied on by him at the hearing seemed to be that the complainant was indebted to him at the time and that title was taken by him in the way of security.

Phebe Wilbur filed an answer in which she averred that the mortgage note for $1,000 was accepted not only on the security of the mortgage on the Ingraham street property but on the representations that Mitchell was of good financial standing and that he possessed real estate other than the Ingraham street property.

On the crucial point—the character of the transfer attacked in the bill—the complainant testified in substance that Mitchell came to her on July 12, 1924; stated that persons for whom she had acted as bail had "skipped;" that she was to transfer her property to him; that it was all right; that he would give the property back to her when she wanted it, and that nothing was paid her by him for the property. She steadfastly refused to acknowledge or admit that she knew at the time that it was a deed she had executed, stating that Mitchell told her that it was a paper he desired her to sign.

Her testimony in important particulars is corroborated by the evidence given by Herbert J. Stowell, the attorney who prepared the deed and who took her acknowledgment. He saw no consideration pass nor was any consideration referred to while he was present. He did not hear all the conversation between the complainant and Mitchell but did hear Mitchell say that he would look out for her interests, that she had nothing to worry about and that he (Mitchell) would give the property back to her when she asked for it. He further testified that he heard Mrs. Ashley say that she trusted him completely. He explained to the complainant that the document she was requested to sign transferred the property to Mitchell.

The first position taken by Mitchell was that the Pine Crest property had always been his, was paid for by him, was taken in his name and then transferred to Mrs. Ashley without consideration, and then reconveyed to him by her on July 12, 1924. When confronted with documentary proof that he had received from Mrs. Ashley $1,000 on April 11, 1923, for the purchase of the Pine Crest property for her, he was obliged to confess that he could not explain the nature of the transaction.

With reference to the Ingraham street property, he stated that Mrs. Ashley owed him $950 and that he took the property over for that consideration. Later he modified his testimony and said the property was taken over by him as security for the debt. A note for $950, apparently signed by the complainant and dated May 1, 1924, was introduced. This alleged debt of $950 and its origin is shrouded in obscurity even though the instrument purporting to be her promissory note is in evidence.

At this point may be noted the claim that the transfer of the Ingraham street property was by way of security. If the testimony of Stowell, a disinterested witness, be scanned, the fact stands out that Mitchell, at the time of the transfer, told Mrs. Ashley that he would reconvey the property to her at any time she desired. This statement, which the Court finds to be a fact, is entirely inconsistent with the theory that the transfer was made by way of security for a debt.

In view of the unsatisfactory character of the testimony given by the respondent, his self-contradictions and admitted lack of memory, the Court finds on the weight of the evidence that, at the time of the execution of the deed now sought to be set aside, the respondent Mitchell was acting as the business adviser of the complainant; that she relied on his advice; that he solicited and procured her signature to the deed in question by statements substantially to the effect that it was for her interest to make the transfer

to him owing to the fact that several persons for whom she had acted as surety on criminal bail bonds had left the State, and that the respondent represented the transfer was a temporary one and that he would reconvey to her at her request, and that the complainant at the time was ignorant of the true nature of the transaction of July 12, 1924, and did not understand that she had conveyed her title to the respondent; that the conveyance was without consideration as to both parcels of land and that such conveyance was not as security for any debt owed by complainant to Mitchell.

The respondent Phebe Wilbur has set up several defenses·

(1) The Statute of Frauds;

(2) That the complainant is not entitled to a reconveyance inasmuch as the conveyance was in fraud of creditors;

(3) That as against her, the complainant is guilty of laches and therefore is not entitled to a reconveyance of the Pine Crest property;

(4) That complainant is estopped to set up her equitable title;

(5) That the complainant is not entitled to a reconveyance notwithstanding the lis pendens filed, for the reason that the respondent Phebe Wilbur was a creditor of Mitchell without notice of the equities of the complainant;

(6) That inasmuch as the conveyance was by way of security and *no instrument of defeasance* had been recorded in the records of land evidence, Sec. 1, Chap. 302, Gen. Laws of 1923, controls.

(7) That Phebe Wilbur is subrogated to the rights of Mitchell as a security holder.

### Statute of Frauds.

Respondent relies on *Broadway Building Company* v. *Salafia*, 47 R. I. 263, as authority supporting her position under the Statute of Frauds.

In that case the Court held that a voluntary conveyance upon a mere promise to reconvey, without more, is within the Statute. Both this case and the subsequent cases of *Rosati* v. *Rossi*, 47 R. I. 493, and *State Lumber Co.* v. *Cuddigan*, 51 R. I. 69, expressly rule that fraud, actual or constructive, at the time of the transfer will take the case out of the Statute. In the instant case, the respondent Mitchell, who stood in a fiduciary relation to complainant, solicited and procured a transfer by her to himself, without consideration, of the property in question. This takes the case out of the Statute.

### Illegality of the Transfer.

The respondent next argues that the parties being in pari delicto in a transaction to defraud creditors, the complainant therefore has no standing to bring her bill.

The rule is clear but it has its limitations.

Other than the State of Rhode Island the complainant was not shown to have had any creditors to be defrauded. The contingent liability to the State had not ripened into a debt and there is no proof that any of the principals on any of the bonds had forfeited their bail.

The parties, moreover, were not in pari delicto. The rule is well settled that where a person, standing in a fiduciary relationship to another, induces the other to transfer his property under the pretence of protecting such property from the claims of others, such parties are not in pari delicto and a bill may be maintained.

2 Pomeroy (4th ed.) 2000-2003, Sec. 942;

*Place* vs. *Hayward*, 117 N. Y. 487;

*Boyd* vs. *De La Montagne*, 73 N. Y. 418.

### Estoppel and Laches.

The respondent Wilbur takes the position that the complainant having al-

lowed the property to stand in the name of Mitchell is now estopped to set up or claim her title.

The mortgage from Mitchell to Phebe Wilbur was executed on December 20, 1926. The negotiations were between the mortgagee and a real estate broker, Ernest Winslow, who had previously done business with her. She testified as follows: "He (Winslow) recommended him (Mitchell) and said he was well off and had other real estate. I didn't know that. I knew it was a second mortgage and just took Mr. Winslow's word for it."

This is all the evidence in the record as to the circumstances under which the mortgage was taken and what induced Phebe Wilbur to loan $1,000. That she relied on Mitchell's general financial standing or was induced to loan $1,000 on the strength of the ownership of the Pine Crest property does not appear.

The complainant did not make any representations or take part in the negotiations which led to the execution of the mortgage, nor did she know of it or that Mitchell was contemplating a loan with the property as security, nor are there facts disclosed which should have led her to suspect that he might mortgage the property or that he was likely to obtain credit on the strength of his legal title. As far as this aspect of the case is concerned, she was an innocent party.

That the party claiming the estoppel must rely on the words or conduct of the party against whom the estoppel is claimed is a fundamental premise of the doctrine of estoppel.

> *R. I. Hospital Trust Co.* vs. *S. H. Greene & Sons Corp.*, 50 R. I. 305.

Such testimony is lacking in this case. The mere fact that land stands in the name of another without more is not sufficient to estop the real owner from setting up his title or his claim to title as against a creditor of the apparent owner.

> *Bennett* vs. *Stratt*, 63 Iowa 620;
> *Blake* vs. *Meadows*, 225 Mo. 1;
> *Hickox* vs. *Eastman*, 21 S. D. 591;
> *Garner* vs. *Findley*, 110 Fed. 123;
> *Huot* vs. *Reeder Bros.*, 140 Mich. 162;
> *Mayer* vs. *Kane*, 69 N. J. Eq. 733.

Knowledge is essential, on the part of a grantor seeking to recover his title, as to the transactions which are set up as an estoppel against him, under the doctrine laid down in

> *Gaddes* vs. *Pawtucket Inst. for Savings*, 33 R. I. 177 at 192-193.

Such knowledge on the part of the complainant has not been shown nor can it be inferred.

The respondent Wilbur also relies on the maxim that where one of two innocent persons must suffer the one who causes the loss must bear it.

The doctrine cannot be applied in this case in view of the authorities cited above and, in addition, the equities between complainant and Phebe Wilbur are not equal. After the time of the transfer to Mitchell, the complainant was the equitable owner of the Pine Crest property. She had an equity which would compel reconveyance to her. Her equitable title was prior in time to any equity obtained by Phebe Wilbur in 1926, when she loaned $1,000 on the Ingraham Street property. As found subsequently herein, the complainant was not negligent or guilty of laches in asserting her rights as far as Phebe Wilbur is concerned. Again it is evident that, in point of fact, Phebe Wilbur did not make the loan in reliance on the ownership of the Pine Crest property. She was content to loan $1,000 on a mortgage on the Ingraham Street property, which was already burdened with a mortgage. Pine Crest was not encumbered but the respondent Wilbur deemed the security of the Ingraham Street prop-

erty sufficient and took that alone on mortgage. It proved not sufficient and she now seeks to extricate herself from the result of her negligence by attempting to set up what amounts to a lien on the Pine Crest property. This, in view of her conduct, she cannot do in the face of the superior equity of the complainant.

Laches cannot be imputed to the complainant.

The equity of Phebe Wilbur, assuming that any came into existence, in dealing with this point, must have arisen on December 20, 1926, when the loan was made to Mitchell. This was two years and six months from the date of the transfer. There is no evidence to show that any facts had transpired to put complainant on her guard, or that she knew that Mitchell was dealing with the property as his own, or that he was obtaining credit by reason of the fact that legal title was in him. She was ignorant of any of these factors in the case. The confidential relationship between the parties still existed.

On all the facts the Court finds that there was no unreasonable delay on the part of the complainant in asserting her rights up to December 20, 1926. The respondent Wilbur makes much of the fact that the bill was not brought until January 22, 1931. It is not shown that this operated to the prejudice of Phebe Wilbur. She was not put in any worse position because of such delay on the part of the complainant. Her rights were imperilled by her own failure to seek a remedy on her note or mortgage if default had taken place after the mortgage was executed.

Creditor without notice of equity.

Respondent Wilbur also asserts that being a creditor of Mitchell without notice of equities she is entitled to prevail, and cites

Maker vs. Swift, 18 Nev. 324, and 21 C. J. 701, Sec. 533.

These authorities lay down the rule that if an innocent creditor of a fraudulent grantee has acquired a lien by levy or execution, he is preferred against the equity of the grantor.

In this case a lis pendens was filed before the lien of the attachment in the suit against Mitchell went on. Under such circumstances any interest in the property involved was subject to the equities of the complainant and the respondent would be bound by any decree which the Court might make in respect to it.

Lamb vs. Cramer et al., 52 Sup. Ct. Rep. 315 (1932).

Chap. 302, Sec. 1, Gen. Laws 1923, providing for recording an instrument of defeasance, does not apply to a case of constructive fraud involved here. The literal words of the section "made defeasible by a deed, bond, or other instrument" cannot be extended by construction to cover the situation revealed in the instant case.

The argument for subrogation cannot avail since on the findings of the Court Mitchell did not take by way of security.

One further point remains to be noticed.

The deed from James W. Rodman of the Pine Crest property when executed ran to Mitchell. After execution, and before recording, he erased the name of Mitchell and inserted the name of the complainant. He is plainly estopped from relying on the invalidity of this deed and the estoppel clearly binds Phebe Wilbur, who took under the sheriff's deed only the right and title of Mitchell and subject to whatever estoppel existed against him.

The Ingraham Street property is in the hands of a purchaser at the foreclosure of the first mortgage and hence is beyond the reach of the complainant. The bill, in addition to the prayer for general relief, contains a prayer for an accounting of rents and profits from the property.

An accounting may be had of all the dealings of the respondent Mitchell with the property involved under the bill.

The complainant is entitled to a re-conveyance of the Pine Crest property, so-called.

Complainant solicitor: Joseph C. Cawley.

Respondent solicitor: Frank H. Wildes, McGovern & Slattery.