WARREN BROOKINGS *versus* EDWARD B. WHITE.

By the provisions of c. 277 of laws of 1852, (R. S., c. 61, § 1,) a married wo-
man may execute a deed of mortgage of her separate estate, which will be
valid, notwithstanding her promissory notes secured thereby cannot, *in law,*
be enforced against her.

A mortgage to secure the payment of a sum of money may be upheld, al-
though there is connected with it no other obligation or contract of the
mortgager, or of any other person, to pay the same.

The case of *Dunning* v. *Pike,* 46 Maine, 461, overruled.

REPORTED from *Nisi Prius,* MAY, J., presiding.

THIS was a process of FORCIBLE ENTRY AND DETAINER,
commenced before the Judge of the Municipal Court for the
city of Bath. The respondent pleaded the general issue,
with a brief statement alleging title in Nancy White, under
whom he justified as her tenant and servant. The case was
thereupon brought into this Court, as the statute provides.

The complainant claimed under the deed of John Brook-
ings to himself of the premises demanded, dated April 13,
1860; the respondent, under a deed from the same grantor
to said Nancy White, his wife, of a prior date.

All the facts in the case necessary to an understanding of
the questions of law considered, are stated in the opinion of
the Court.

*Gilbert & Sewall,* for the complainant.

The history of the transaction is this : —

On the 31st of October, 1857, John Brookings sold the
premises in dispute to Mrs. White, and on that day had his
deed made and executed; but it was not delivered. At a
later day, on Nov. 5th, 1857, the parties met to consum-
mate the bargain and Brookings delivered his deed and re-
ceived in payment therefor a deed of certain premises in
Richmond, which were valued at six hundred dollars, and
for the balance of the purchase, which was six hundred dol-
lars, the note of Mrs. White, secured by a mortgage of the

premises, in Woolwich, conveyed to her, were given to Brookings.

These notes, though dated the 31st day of October, are admitted to be notes secured by and described in the mortgage, and that the deeds of October 31st, and November 5th, are all a part of one and the same transaction.

The deed and mortgage constituted one contract, and the notes of a married woman being void, which has been well settled in this State, the mortgage was of no effect. *Howe* v. *Wildes & ux.*, 34 Maine, 556; *Roach & ux.* v. *Randall*, 45 Maine, 438.

The mortgage being of no effect and the notes void, the deed from Brookings to Mrs. White, was inoperative, and passed no title.

The same question has been presented and decided by this Court in *Newbegin* v. *Langley*, 39 Maine, 200.

The deed of the premises in Richmond was not a sufficient consideration for this deed. We contend that John Brookings took no title by that deed. That deed, the mortgage and notes secured by the mortgage and the deed from Brookings to Mrs. White, constitute but one contract, and they must stand or fall together. If the proposition of law in *Newbegin* v. *Langley*, just cited, is a sound one, that "the deed and the mortgage are but one contract, and they cannot be void in part and good in part," then nothing passed by that deed. It was void at the time of its delivery.

*Tallman & Larrabee* argued for the respondent.

Separate opinions were drawn up by RICE and DAVIS, JJ.

RICE, J.—This is a process of forcible entry and detainer. The defendant justifies under the title of Nancy White, and the case must be determined on the validity of that title. Both parties derive their title from one John Brookings, who, on the 31st day of October, 1857, executed a deed of the premises to said Nancy White, who is the wife of the defendant. In payment for the estate thus conveyed she gave her promissory notes for six hundred dollars, which sum

was secured by mortgage on the premises; and also conveyed another parcel of real estate, which she held in her own right, to Sarah Brookings, wife of said John, by deed dated November 5, 1857.

It is admitted that the above named deeds, notes, and mortgage, were all delivered at one time and constituted one transaction.

The complainant derives his title from the same John Brookings, by deed dated April 13, 1860.

The ground assumed by the complainant, is, that the transaction between John Brookings and the said Nancy was wholly invalid, from want of capacity on her part to convey real estate, which she held in her own right, or to execute a mortgage thereof, by which her title should pass, without the concurrence of her husband.

To what extent the acts of married women, with reference to their separate estate, real or personal, will be deemed obligatory, in equity, is not very clearly defined in the adjudged cases. Nor does it become material to determine under what circumstances courts of equity will enforce the contracts or uphold the deeds of such persons.

At common law a married woman could neither bind her person by contract, nor her estate by deed. Has she acquired such power by force of existing statutes? It was decided by this Court, in the case of *Swift* v. *Luce*, 27 Maine, 285, that although she could, under statutes then existing, *hold* and *possess* estate both real and personal in her own right and as her separate property, exempt from any liability for the debts or contracts of the husband, yet she could not sell or convey the same without the consent of the husband.

It was also decided, in the case of *Howe* v. *Wildes & ux.*, 34 Maine, 566, that the promissory notes of a married woman were void. This decision has been affirmed by several subsequent decisions of this Court.

In *Newbegin* v. *Langley*, 39 Maine, 200, it was decided that the deeds of married women were void. Such was the

condition of the law in this State prior to the year 1852. Before that time, the Legislature had passed several Acts designed to secure to married women, more fully than at common law, their rights in their property. These Acts, however, being in derogation of the rules and principles of the common law, had been strictly construed by the Court.

In 1852, a most important step was taken by the Legislature towards the absolute enfranchisement of married women. By c. 227 of the laws of that year, it was provided that any married woman who is or may be seized and possessed of property, real or personal, as provided for in the Acts to which this is additional, shall have power to lease, sell, convey and dispose of the same, and to execute all papers necessary thereto, in her own name as if she were unmarried.

This provision is in substance reënacted in the Revised Statutes, c. 61, § 1.

The power thus conferred upon married women to control, sell and convey their estate, real and personal, is full and absolute. It cannot be made more complete. They may, under its provisions, bind their estates as effectually as any other citizen. Thus far the law extends the rights of women under coverture. But they still remain under the common law disabilities as to personal contracts. Being personally subject to the control of their husbands, under the general law, they are not permitted to enter into contracts of a personal character, by which that control may be interrupted. She may execute a lease or deed by which her estate may be bound; but she cannot make a promissory note by which she will be personally bound. This is the general rule, the exceptions to which, if any, do not apply in this case.

In the transaction under consideration, it follows from the principles already stated, that the promissory notes of Nancy White were invalid, as personal security, against her.

This, then, presents the question, whether personal security is essential as a basis for a valid mortgage of real estate. The law on this point is well settled.

The deed (mortgage) only contains a proviso, that if the money be paid at such a day, then the deed, as also the obligation describing it, shall both be void. Sometimes, however, no separate security is taken, and, of course, none mentioned in the deed; but the proviso is merely, that if such a sum is paid by such a day, the deed shall be void. It is clear that the absence of the bond, or other express obligation to pay the money, will not make the instrument less effectual as a mortgage, if the mortgagee have the money. 2 Greenl. Cruise, 82, and cases cited.

A mortgage is a conditional conveyance of land, designed as security for the payment of money, or performance of some other act, and to be void upon payment or performance. 1 Hill. on Mort., 2.

A mortgage is a conditional sale. The absence of any bond or covenant to pay the money will not make the instrument less effectual as a mortgage. 4 Kent's Com., 145–147. It is not the less a mortgage because there was no collateral personal security for the debt taken at the time. *Rice* v. *Rice*, 4 Pick., 349; *Smith* v. *People's Bank*, 24 Maine, 185.

But it has been suggested, by way of argument, that no case can be found in which a mortgage has been upheld when the notes it was given to secure were void; and, therefore, such a mortgage must be invalid. No case, probably, can be found where a mortgage has been upheld which was given to secure the payment of a note which was invalid for want of consideration. But, as we have seen, cases are numerous in which mortgages have been held valid without the existence of personal security, or where the mortgager whose estate is pledged is not a party to the personal contract thereby secured. The office of a mortgage is to furnish security for the payment of the money loaned, or the performance of some other act. Notes ordinarily afford evidence of the amount of money loaned and the times of payment, and also give the additional personal security of the makers, but are not necessary to the validity of the mortgage itself.

A married woman may, at common law, by joining with her husband, make a valid mortgage of her separate estate ˌto secure his debt, or that of a third person. *Dumerest* v. *Winkoop*, 3 Johns. Ch. R., 127 ; *Fowler* v. *Sherman*, 7 Mass., 14.

Now it is not denied, that under our statute a *feme covert* may actually sell and convey real estate held in her own right, on sufficient consideration, without joining with her husband, by deed absolute and irrevocable. Such being the law, it would be illogical, not to say absurd, to determine that she may not, on like consideration, make a conditional sale and conveyance of the same estate, reserving for her own benefit the right to defeat such sale by the re-payment of the consideration, or the performance of a stipulated act within a given time. The fact that she has by the statute the right to convey absolutely all her interest in her estate, carries with it, by necessary implication, the right to make a conditional sale. The one is the logical sequence of the other.

That Nancy White received a valuable and full consideration for the mortgage executed by her is not denied.

The case of *Dunning* v. *Pike*, 46 Maine, 461, is supposed to be in conflict with the views herein expressed. This may be so. That case was decided upon a state of facts which transpired subsequent to the Act of 1852, c. 227. That Act, however, was not alluded to by counsel at the argument, nor by the Court in their opinion. It undoubtedly escaped the attention of both Court and counsel, and was decided upon the law as it existed prior to 1852, and following former decisions of the Court. Having thus been decided upon a misapprehension as to the existence of the Act of 1852, it cannot be deemed an authority in this case.

As the law now stands, the transaction between John Brookings and Nancy White must be deemed valid and obligatory upon the parties thereto, so far as the deeds and mortgage then executed are concerned.

The only effect of the deed, from John Brookings to the complainant, was to assign to the latter the mortgage which

he had received from Nancy White. But thus standing in the place of the original mortgagee will not enable him to maintain this process. *Reed* v. *Elwell*, 46 Maine, 270.

According to the agreement there must be judgment for the defendant.

TENNEY, C. J., MAY and GOODENOW, JJ., concurred.

DAVIS, J.—The defendant claims to hold possession of the premises in controversy by virtue of the title of his wife, Nancy White.· She purchased the property during her coverture, and paid therefor, in part, by her own promissory notes, secured by a mortgage, dated Nov. 5, 1857. It is contended that her notes were void, and that consequently the deed to her, and her mortgage, were also void. Several cases are relied upon as decisive of the question. *Howe* v. *Wildes*, 34 Maine, 566 ; *Langley* v. *Newbegin*, 39 Maine, 200 ; *Roach* v. *Randall*, 45 Maine, 438 ; *Dunning* v. *Pike*, 46 Maine, 461.

How far the contracts of a *feme covert* are valid, is a question upon which there has always been much difference of opinion. Though regarded void, in the sense that there could be no remedy upon them *at law*, many of them have always been held valid *in equity*. But what contracts should be held absolutely void, and what should be sustained in equity, cannot be easily determined from the decisions.

Nor has the special legislation of the last twenty years tended to remove the difficulty. A partial enfranchisement of the wife, while the common law relations between her and the husband remain unchanged, is an innovation that unsettles the past without settling the future. The status of the *feme covert*, instead of being fixed by such legislation, becomes a difficult question for the judiciary. It imposes the task of adjusting new rights and powers to old and still existing disabilities. It is not strange that there should be, for a time, some oscillation of opinion, resulting in conflicting decisions.

Was the mortgage given by Nancy White, to secure her own promissory notes, valid?

If there had been no evidence of the debt but the mortgage itself, the question would have been the same. If the promissory note of a *feme covert* is void, it is not because of the *form* of the contract, but because *any promise* to pay money, whether written or verbal, is not binding upon her. *Bates* v. *Enright,* 42 Maine, 105.

A mortgage may contain an admission of a debt, on which a personal action will lie against the mortgager, when no promissory note or other collateral promise is given. *Elder* v. *Rouse,* 15 Wend., 218. But, if there is no such admission, and no collateral promise, the mortgagee has no claim upon the *person* of the mortgager. *Weed* v. *Covill,* 14 Barb., 242. His only remedy is against the property itself. *Rice* v. *Rice,* 4 Pick., 349; *Russel* v. *Southard,* 12 How. U. S., 139, 152.

The case at bar involves several questions. Is a valid debt essential to the validity of a mortgage? Can a married woman contract such a debt? Has she the legal capacity to make such a conveyance?

1. A debt or obligation is necessary to sustain a mortgage. There may be no promise, either collateral or in the mortgage; but there must be an obligation of some kind, to secure the performance of which the mortgage is given. "A mortgage," says Hilliard, "is a conditional conveyance, designed as security for the payment of money, or the performance of some other act, and to be void upon such payment or performance." *Mitchell* v. *Burnham,* 44 Maine, 286. The obligation, though not always for the payment of money, is usually called the "debt;" and this, being the foundation of the mortgage, "is the principal thing." In the language of Chancellor KENT, in equity, "the mortgage is merely security for the debt;"—"a mere incident attached to the debt." 1 Hilliard, 163; *Smith* v. *People's Bank,* 24 Maine, 185.

The debt or obligation must therefore be a *valid* one, or the mortgage will be void. Thus, in those States in which a usurious note is valid, for any part, a mortgage to secure such a note will be upheld. *Turner* v. *Calvert,* 12 S. & R.,

46. But, where such a note is wholly void, as formerly in this State, a mortgage to secure such a note is also void. 1 Hilliard, 370; *Richardson* v. *Field*, 6 Maine, 35; *Miller* v. *Hull*, 4 Denio, 104. So is the mortgage void if the note is void for any other reason. *Ellsworth* v. *Mitchell*, 31 Maine, 237.

It is not essential that the debt should be that of the mortgager. One may mortgage his property to secure the debt of another. So a *feme covert* may mortgage her estate to secure the debt of her husband. *Gahn* v. *Neimcewicz*, 11 Wend., 312; S. C., 3 Paige, 614; *Hawley* v. *Bradford*, 9 Paige, 200; *Van Horn* v. *Emerson*, 13 Barb., 526; *Swan* v. *Wiswall*, 15 Pick., 125; *Nash* v. *Spofford*, 10 Met., 193. But it is assumed in all these cases, and numerous others that might be cited, that a valid obligation, for which the mortgage is merely security, is essential to the validity of the mortgage. *Bartlett* v. *Bartlett & ux.*, 4 Allen, 440.

2. Can a married woman, in this State, give such an obligation?

At common law, a *feme covert* was not *personally* liable upon her contract, even for necessaries, though living separately from her husband, and having property in her own right. *Shaw* v. *Thompson*, 16 Pick., 198.

In many of the States, she is now enabled, by statute, to trade in her own name, upon her own account. In most of the States she can own property in her own right, for her separate use, and make contracts respecting it. In such case, she may purchase real estate, and is bound personally upon her promissory notes given therefor. *Ames* v. *Foster*, 3 Allen, 541.

But in this State, with some exceptions not applicable to the case before us, her power to make contracts remains as at common law. The statute giving her power to take and *hold* property, to her separate use, gave her no power to *convey* it. *Swift* v. *Luce*, 27 Maine, 285. Nor has any subsequent statute given her general power to make contracts, even respecting her property. So that the validity of the

notes, given by the defendant's wife, is to be determined without regard to any statute.

Some contracts of married women, though 'not binding upon their *persons*, have always been valid against their *property*. "Her separate estate," says Judge STORY, "will, in equity, be held liable for all the debts, charges and incumbrances which she does expressly, or by implication, charge thereon." 2 Story's Eq., § 1399.

The English cases on this subject are very numerous. Contracts of married women, of great variety, have been enforced against their separate property. The reasons given are various, and inconsistent with each other. Though no Court would hold that the property of one not under coverture could be specifically charged, except by an express contract therefor, the property of married women has been subjected to such charges without any contract therefor, upon proof *aliunde* of an "implied intention." Sometimes it has been held necessary that the contract should be in writing; and in other cases this doctrine has been denied. Sometimes every contract of a *feme covert*, made *for the benefit* of herself, or of her separate estate, has been held an implied "appointment" of enough of such estate to secure its performance. But as this would make successive charges, with priority of right, after her decease, this doctrine was repudiated; and all such creditors were made to share alike. The original doctrine seemed to be, that a married woman, so far as she had the power to dispose of her separate property, was to be deemed a *feme sole* in regard to it; and that her contracts, though not binding upon her *person*, could be enforced in *equity* against such property. *Hulme* v. *Tenant*, 1 Bro. C. C., 16. And to this, very nearly, the English courts have now returned. In *Owens* v. *Dickenson*, 1 Craig & Phillips, 48, it is said, — "Inasmuch as her creditors have not the means *at law*, of compelling payment of her debts, a court of equity takes upon itself to give effect to them, not as *personal* liabilities, but by laying hold of the *separate property*, as the only means by which they can

be satisfied." And, in a later case, it is said, that a court of equity "gives execution against her property, just as a court of law gives execution against the property of other debtors." *Johnson* v. *Gallagher*, London Jur. Mar., 1861.

In this country, the courts have not gone so far. The earlier cases are collected in Leading Cases in Equity, 330, Hare & Wallace's Am. notes. Many of the later cases are based upon the statutes enlarging the rights and powers of married women. There is a considerable diversity, if not actual conflict of opinion. Their power, irrespective of any statute, to create incumbrances upon their separate property, is conceded by all the courts. And though, in some States, this has been carried nearly to the extent of the English doctrine, in others the rule is essentially modified. But the most cautious go at least to this extent, — that a *feme covert*, in any way by which she has the legal capacity to act, may bind her separate property *by any express contract therefor*, made for her own benefit, or for the benefit of her estate. *Conway* v. *Smith*, 13 Wis.; *Am. Coal Co.* v. *Dyett*, 7 Paige, 9; *Yale* v. *Dederer*, 18 N. Y., 265; S. C., 22 N. Y., 540; *Willard* v. *Eastham*, 15 Gray; *Pentz* v. *Simonton*, 2 Beasley, N. J.; *Glass* v. *Warwick*, 39 Penn., (4 Wright.)

If the doctrine were carried no further, it would cover the case at bar. The notes were given by Nancy White for her own benefit, for property deeded to her in her own right. Though not binding upon her *person*, they were so far valid that she could make them a charge upon her *property*, by any express contract therefor which she had the legal capacity to enter into.

4. Had she power to make the mortgage which she gave to secure the notes?

Courts of equity often hold that to be done which is agreed to be done. Therefore, though the deed of a *feme covert* was void at common law, her agreement to make a debt a charge upon her separate estate, has been treated, in equity, as an actual incumbrance. But this rule was applied to estates in which she had only an equitable interest, the legal

title being in some other person, in trust for her. When the power was conferred upon her, by statute, to hold the *legal title*, in her own name, she was still incapable of conveying, or making a *legal* charge upon it, until empowered to do that also by statute. *Yale* v. *Dederer*, before cited.

By chapter 227, of the laws of 1852, it was provided "that any married woman who is or may be seized and possessed of property, real or personal, shall have power to lease, sell, convey and dispose of the same, and to execute all papers necessary thereto, in her own name, as if she were unmarried." This clearly gives her the power to mortgage her property to secure any valid debt or obligation. And, as she could formerly make her own debt, though not *personally* bound by it, a charge upon her estate *in equity*, now she may make it a charge, *in law*, by giving a mortgage of specific property as security for its payment.

I am aware that the views here expressed are not in harmony with the decision in *Dunning* v. *Pike*, 46 Maine, 461. The previous cases, except that of *Howe* v. *Wildes*, were decided on the ground that the *deeds* were void because the *notes* were void. As the statute of 1852 did not confer any power upon married women to give promissory notes, its bearing upon the case was overlooked. It was assumed that the notes had no validity whatever; and the invalidity of the mortgage was a logical deduction.

The power of a *feme covert* to create an incumbrance upon her separate estate has seldom been discussed before the Courts of this State. The exercise of this power has become frequent, since the statutes have enabled married women to purchase and hold property in their own right, and to convey it, as if unmarried. And it cannot be doubted that now, in law, as well as in equity, such incumbrances can be sustained according to the intention of the parties.

*Judgment for the defendant.*

KENT, J., concurred.