THE FIRST NATIONAL BANK OF FLORIDA, AND JAMES M. SCHUMACHER, TRUSTEE, APPELLANTS, VS. WILLIAM H. ASHMEAD AND HARRIET L. ASHMEAD, APPELLEES.

MORTGAGE OF HOMESTEAD—HUSBAND AND WIFE MUST JOIN IN MAKING—DEED ABSOLUTE IS MORTGAGE WHEN GIVEN TO SECURE DEBT—ESTOPPEL.

1. Where husband and wife both join in the execution of a deed, absolute in form, covering their homestead, that the wife admits she executed for the purpose of securing an indebtedness of her husband amounting to $5,000; and that the husband also admits that he executed, but that he executed it to secure his indebtedness to the amount of $5,161.08, in the absence of any proof showing that the wife executed it for any larger sum than $5,000: *Held,* That such deed is a valid mortgage upon the homestead covered thereby to the extent of $5,000, as admitted by the wife.

2. Where a wife joins with her husband in the execution of a deed, absolute in form, covering their homestead, that she executes for the purpose and with the intention and understanding that it is to secure a certain amount of indebtedness due from her husband, the husband and mortgagee will not be permitted materially to change and alter the transaction to which the wife gave her consent in executing such deed, by executing between themselves, independently of her, and without her knowledge and consent, a separate instrument or defeasance, as part of such mortgage, by which materially new conditions and an increased amount are engrafted into the mortgage. In

such case the deed absolute will be held to be a valid mortgage only for the amount and upon the conditions as understood and consented to by the wife.

3. Where a mortgagor executes and delivers to the mortgagee a mortgage that upon its face when delivered, appears to have been duly executed by such mortgagor in the presence of two subscribing witnesses, and acquires therewith a valuable consideration from such mortgagee, in the absence of proof showing knowledge to the contrary in the mortgagee, such mortgagor will be estopped from afterwards attempting to defeat such mortgage by showing that it was not in fact executed by him in the presence of the subscribing witnesses whose names appear upon such instrument.

Appeal from the Circuit Court for Duval county.

The facts of the case are stated in the opinion of the court.

*Randall & Foster* for Appellants.

*A. W. Cockrell & Son*, for Appellees.

TAYLOR, J.:

This cause now comes before this court, upon the appeal of the complainants below, for the second time. First National Bank, etc., vs. Ashmead *et ux.*, 23 Fla., 379, 2 South. Rep., 657. The former appeal was from an order sustaining pleas filed by the defendants to the complainants' bill for foreclosure of a mortgage executed by both husband and wife, wherein it was set up as a defense that the mortgaged property constituted the homestead of the defendants. After the reversal by this court of the order appealed from in the original suit, the complainants, by leave of the court below, and without prejudice to any of their rights, discontinued their original suit, and filed a new bill

against the same defendants. The new bill, for all practical purposes, is substantially the same as the one filed in the original suit, a full statement of which is reported in the case in 23 Fla., *supra*, except that the new bill, in its allegations as to Mrs. Harriet L. Ashmead's knowledge of the purposes and intent of the instrument signed by her, charges that "before and at the time of the execution by her of the deed she was fully informed and had knowledge that said deed was intended to be and was a security to the said First National Bank of Florida for the indebtedness, to-wit: $5,161.08 mentioned in said paper," meaning the separate instrument or agreement executed by James M. Schumacher as the representative of the bank and William H. Ashmead, whereby Schumacher bound himself to reconvey the property described in the deed upon the payment of $5,161.08. To the new bill the defendants William H. and Harriet L. Ashmead made separate answers. William H. Ashmead in his answer admits that on the 4th of March, 1884, he and one Clarence H. Ashmead were indebted to the complainant bank in the sum of $5,161.08 for money loaned and advanced before that day, as set forth in the defeasance executed by him on the same date with the deed. He also admits the execution and delivery by him and his wife of the deed to Schumacher dated March 4th, 1884, and he admits the execution by him of the separate agreement for the reconveyance of the property covered by the deed upon his paying the aforesaid sum, but denied that he executed either of said papers in the presence of the subscribing witnesses thereto, or that he ever acknowledged his signatures thereto in their presence. He avers that the deed, referred to in the bill as exhibit "B," was executed by him for the purpose and

JANUARY TERM, 1894. 419

First National Bank et al. v. Ashmead and wife.—Opinion of Court.

with the intent set forth in the separate agreement or defeasance signed by him and Schumacher alone, and referred to in the bill as exhibit "A." That both of said writings were signed cotemporaneously—exhibit "A" being thereby made a part of exhibit "B," the two constituting the written evidence of one transaction; and that he thereby undertook to place the real property described in exhibit "B" under a mortgage lien to the said bank, upon the promise made by and on behalf of said bank that said bank would furnish such monetary and other assistance to the firm of Ashmead Bros. as would enable them to tide over their monetary embarrassments which were then known to said bank; and that without such a promise he would not have undertaken to place the said property under said mortgage lien; but that said bank, after said writings were signed and delivered to it, refused to extend said assistance, whereby the said Ashmead Bros. were compelled to go and did go into assignment. He avers also that he and Harriet L. Ashmead are husband and wife, and occupied that relationship to each other for some years prior to the 4th of March, 1884, when said instruments were executed, and are citizens of the State of Florida; and that the property upon which a mortgage lien is claimed and sought to be enforced by the bill constituted on or before said 4th of March, 1884, and has ever since constituted his homestead and that of his family, consisting of his said wife and their infant child, upon which they then and now actually resided as their home; said premises embracing less than half of one acre in the incorporated limits of the city of Jacksonville, and were then and are now used exclusively as a homestead by him and his family. He, further answering, "denies that said homestead or any part thereof in law or in equity was conveyed to said

420 SUPREME COURT.

First National Bank et al. v. Ashmead and wife.—Opinion of Court.

Schumacher to secure the money indebtedness set up in the bill." He denies that his wife Harriet L. Ashmead was fully informed and had knowledge that said deed was intended to be and was a security to the said bank for the indebtedness mentioned in said agreement referred to in the bill as exhibit "A." On the contrary he avers, on information and belief, that the said Harriet L. had no such knowledge or information. And, on information and belief, he denies that she had any information of the existence or proposed existence of said paper, exhibit "A," or of the contents or stipulations thereof; or that the contents and stipulations thereof were agreed upon by her or proposed to be agreed upon. And that she had no knowledge whatever that said paper (exhibit "A") was executed or to be executed, or that the agreements 'or stipulations thereof had been agreed upon or were to be agreed upon as part of the deed executed by her, or otherwise. He further avers that he requested and urged his said wife to sign said deed, before said exhibit "A" was signed, as a means of saving Ashmead Bros. from failure. That she was not informed by him at or before she signed said deed of the amount or character of the indebtedness of said firm to said bank. That he did inform her before she signed said deed that it was designed as further or collateral security to said bank for the indebtedness of Ashmead Bros., but he did not inform her before or at the time said deed was signed, nor did she know, nor was she informed by any one whether the indebtedness was then due or past due, or when it was to become due. He neither admits nor denies whether any part of said indebtedness has been paid or not, but says that on the 24th of April, 1884, his firm of Ashmead Bros. made a general assignment for the benefit of their creditors; that their

assigns took possession of their assets, and that he does not know as to the distribution, if any, made by the assignee of those entitled thereto. As part of his answer he demurs to the bill upon the grounds: 1st. That it is not made certain whether a mortgage lien is sought to be enforced for the alleged indebtedness of $5,161.08, or for that sum and other sums; 2nd. Said bill is wanting in equity in this: It does not distinctly appear from the allegations of said bill whether it is claimed that the said respondent Harriet L. Ashmead assented to the placing, or contracted for the placing a mortgage lien of the sum of $5,161.08, or for other or further and other sums; 3rd. Said bill is wanting in equity.

Mrs. Harriet L. Ashmead, in the first paragraph of her answer, denies that she knew of or had any information of the alleged indebtedness of William H. and Clarence Ashmead to the First National Bank of Florida in the sum of $5,161.08 on the 4th day of March, 1884, or in any other sum, or on any other day, for money loaned and advanced, or on any other consideration; and denies that she knew on the said 4th day of March, 1884, nor for a long time thereafter have any information of the existence or contents of the paper or agreement referred to as exhibit "A." She denies that she with her husband, in order to secure the payment of said money and the interest thereon, executed the deed set forth in the bill; on the contrary, she avers that she knew nothing at the time said deed was executed, and for a long time thereafter of the alleged indebtedness set forth in said paper (exhibit "A"), and that she knew nothing of its character or amount, nor as to how, nor on what account, or when the same accrued, if the same did accrue. She admits that she signed the deed referred to in the bill; but avers that

422       SUPREME COURT.

First National Bank et al. v. Ashmead and wife.—Opinion of Court.

she did not sign it in the presence of the persons, or either of them, whose names are thereto subscribed as attesting witnesses, but that she acknowledged her signature thereto to both of said subscribing witnesses separately; and she admits that she acknowledged before Walter Yates, the notary, that she voluntarily signed said deed. She also sets up her marital relationship to William H. Ashmead, and that they resided on the premises as their homestead, and that said premises constituted their homestead. She denies that said "homestead or any part thereof in law or in equity was conveyed to said Schumacher to secure the money indebtedness set up in the bill." She admits that her husband and Schumacher at the time the deed was so signed by her said husband, and as a part of said deed, entered into the agreement in writing referred to in the bill as exhibit "A;" but she denies that she was, before and at the time of executing said deed, fully informed and had knowledge that said deed was intended to be and was a security to the said bank for the indebtedness mentioned in said paper. She further avers that she did not consent to, nor was she asked to assent to the stipulations and conditions in said agreement contained. She avers that the only knowlege or information had by her, at or before the time the said instrument was so signed and acknowledged by her, as to the intent of said instrument and the purpose for which it was executed, other than that furnished by the instrument itself, was communicated by her husband, who informed her the day the deed was signed by her, that he, the said William H. Ashmead, desired to furnish the said bank additional security for the indebtedness of the Ashmead Bros.; and that for this additional security the bank would enable them,

First National Bank et al. v. Ashmead and wife.—Opinion of Court.

to avoid failure which was then imminent but for the said proffered assistance of the bank. The amount of the indebtedness was not communicated to her, but she supposed it was the amount expressed as the consideration of the deed, that is, the sum of five thousand dollars; and she avers that she had no information of the amount of such alleged indebtedness other than such as she derived as aforesaid by inference from the recital of the alleged consideration money, the same being $5,000 contained in the deed itself; and that she was not informed and she did not know when the said deed was so signed and acknowledged by her whether the said supposed indebtedness was then due, or when it was due or to become due. Embodied in her answer there is also a demurrer to the bill upon the same grounds as that contained in the answer of William H. Ashmead. The complainants filed exceptions to both of said answers, and set down the demurrers contained therein for argument. The exceptions to the answers were overruled upon the ground, as stated in the order disposing of them, that a general replication to said answers had been filed. The replication, however, as shown by the record. was filed on the same day that the court made its ruling upon said exceptions.

A master was appointed to take testimony, and upon the bill, answers and testimony taken by the master, and by commission for a non-resident witness, the cause was heard and a final decree rendered in favor of the defendants, dismissing the bill at complainants' cost. From this decree the complainants have appealed.

The material leading facts alleged in the bill that involve the merits of the controversy between the parties are: (1). That William H. Ashmead and his copartner Clarence H. Ashmead were indebted to the com-

plainant bank in the sum of $5,161.08. (2). That in order to secure the payment of this debt William H. Ashmead and Harriet L. Ashmead, his wife, by deed, absolute on its face, in which a consideration of $5,000 is recited, conveyed the property described therein to the complainant James M. Schumacher, who took such conveyance really in trust for the bank to whom the indebtedness was due. Neither the amount or the justness of the alleged indebtedness is disputed in any way, but is practically admitted. The execution and delivery of the deed absolute in form, but for the purpose and with the intention of securing the indebtedness of the Ashmead Brothers to the bank, is also admitted. These admissions, made by both of the defendants, under our statute declaring what shall constitute a mortgage (McClellan's Digest, pp. 765, 766; Rev. Stats. secs. 1981, 1982) makes this deed, absolute in form, a mortgage unquestionably. The effort of the defendants, however, to avoid its enforcement, is to show that the conditions upon which the deed was given were contained in the separate agreement executed by William H. Ashmead and James M. Schumacher, in which Mrs. Ashmead did not join, and by which Schumacher obligated himself to reconvey the property contained in the deed to William H. Ashmead, or to whomsoever he should dictate, upon his payment by the 5th of March, 1885, of the indebtedness of $5,161.08 and interest thereon at the rate of eight per cent. per annum, payable semi-annually, and $100 for attorneys' fees accrued by reason of their default in the payment of their past due notes and for the drafting of the papers connected with such mortgage; and because Harriet L. Ashmead had no knowledge of this separate agreement, constituting a part of the mortgage, at the time she executed the deed, or of

the actual amount of the indebtedness that the deed was intended to secure, or of the time it accrued or was to accrue, or of the stipulation to pay the $100 for attorneys' fees, or of any of the terms of such separate agreement; and both herself and her husband now seek to repudiate their deliberate act in executing the deed upon the ground that the property mortgaged consisted of the homestead of William H. Ashmead, that, under the Constitution, could not be alienated without the joint consent of husband and wife; and that because Mrs. Ashmead was not a party to the defeasance that constituted a part of the mortgage, and had no knowledge thereof when she assented to such alienation of the homestead by her execution of the deed, that the whole transaction is void to effectuate a mortgage or alienation of such homestead because of the want of her sanction and consent to the entire transaction. We think that it is true that where husband and wife join in the execution of an instrument that in form is a deed absolute covering their homestead, but that is executed and delivered with the intent and for the purpose of securing the payment of an indebtedness of the husband that the wife is led to believe, when she assents to such mortgage, amounts only to a given sum, that the mortgagee and husband would not be permitted materially to change and alter the transaction to which the wife gave her consent in executing such deed, by the execution between them, independently of her, of a separate instrument or defeasance as a part of such mortgage by which materially new conditions and an increased amount, of which she had no information or knowledge, were engrafted into the mortgage. To permit such a transaction would be to consummate a fraud upon the rights of the wife, and would be, *pro tanto,*

an alienation of the homestead at the behest of the husband alone, without the consent of the wife, and contrary to the mandate of the organic law. Merced. Bank vs. Rosenthal (Cal., Dec. 28th, 1892), 31 Pac. Rep., 849. But we do not think that her failure to sign or become a party to the separate agreement or defeasance executed by her husband and Schumacher has the effect of vitiating the entire transaction. Such separate agreement or defeasance is void as to her only in those features thereof that were not included in her understanding of the transaction at the time she executed the deed. In the former decision of this case it was held that parol evidence is admissible in equity to show that a deed of conveyance, absolute on its face, was intended as a mortgage, and that where it is shown that such a conveyance has been executed to secure the payment of money, equity will treat it as a mortgage. The bill alleges that the deed, absolute on its face, executed by both of the defendants, was given as a security for debt, and both of the defendants in their answers admit this to be true. So far as William H. Ashmead is concerned, the deed is admitted to have been executed to secure $5,261.08; but Mrs. Ashmead admits that she executed it to secure a debt for $5,000 only. The deed absolute itself recites the latter sum as being the consideration upon which it was executed. With this admission on Mrs. Ashmead's part, taken in connection with the allegations of the bill and the contents of the deed, a valid mortgage is made out, binding upon both of them as husband and wife, to the extent of $5,000, independently of the agreement or defeasance to which Mrs. Ashmead was not a party; and the facts, admitted to be true, that constitute it a mortgage, could have been established by parol. The bill alleges that Mrs. Ash-

mead had full knowledge of the separate defeasance
executed by her husband and Schumacher, and of the
contents thereof, and that she executed the deed abso-
lute with the knowledge that it was to secure the pay-
ment of the amount set out in such defeasance and
upon the terms and conditions therein expressed. She
denies this in her answer, but admits that she executed
the deed to secure a debt of her husband that she
thought amounted to $5,000, because that sum was re-
cited as the consideration in the deed signed by her.
To prove that she did have knowledge of the contents
and terms of the defeasance the appellants, complain-
ants below, introduced only the depositions of John
T. Walker, who was the attorney that conducted the
negotiations culminating in the execution of the mort-
gage involved herein, representing in such negotiations
both Ashmead and the bank, and who drafted the
deed and the defeasance. While he testifies that he
had two interviews with Mrs. Ashmead, one of them
before, the other after the execution of the deed by
her, in both of which he informed her fully of the
transaction, yet he does not state that she ever saw or
knew of the defeasance; and, too, he swears that it was
his understanding that the deed was given to secure
the sum of $5,000 only. That he told Mrs. Ashmead
that her husband's debt to the bank was greater than
$5,000; but he says, that the bank was willing to take
the security for that sum. We are without proof,
then, to sustain the mortgage as against Mrs. Harriet
L. Ashmead, except to the extent of $5,000 as admitted
in her answer. The overplus of $261,08, above that
amount, mentioned in the defeasance, and the provis-
ion in the defeasance for the payment of attorneys'
fees in the event of foreclosure, are not proved to have

428          SUPREME COURT.

First National Bank et al. v. Ashmead and wife.—Opinion of Court.

been incorporated into the transaction with her knowledge and consent, and are, therefore, not binding upon her.

William H. Ashmead is estopped in equity from attempting, as he seeks to do in his answer, to avoid the effect of his acts in executing and delivering the mortgage, upon the ground that his execution thereof was not done in the presence of witnesses. The record shows that he delivered this mortgage to the bank in its executed condition, such execution of it by him having been apparently done in the presence of two subscribing witnesses, the genuineness of whose signatures is not questioned. It appears also that by means of this mortgage, so executed with all apparent formality, he acquired from the bank an extension of time for the payment of the debt secured thereby. To permit him now to take advantage of his own error or omission in not, in fact, executing it in the presence of subscribing witnesses, if such witnesses were absolutely necessary to its binding efficacy upon him, when the instrument upon its face purported at its delivery to have been duly witnessed and acknowledged for record, in the absence of proof showing knowledge to the contrary by the bank, would be to allow him to perpetrate a fraud upon the bank, who has acted upon the representation involved in the delivery by him of an instrument executed by him having all the appearance of a formally witnessed and acknowledged document. 4 Jacob's Fisher's Dig., Tit. Equitable Estoppel, 4744; Herman's Law of Estoppel, Chap. 12, p. 334; 2 Pomeroy's Eq. Jur., Section 804, note 1.

It becomes unnecessary to pass directly upon the rulings of the court below upon the pleadings in the cause.

The decree of the court dismissing the complainants' bill is reversed with directions to enter a decree in favor of the complainants, as prayed for in their bill, for the sum 'of five thousand dollars, with interest thereon at the rate of eight per cent. per annum from the 4th day of March, A. D. 1884, and the costs of the proceeding, but without any allowance for attorneys' fees for the foreclosure of the mortgage.