THE EQUITABLE BUILDING AND LOAN ASSOCIATION, A CORPORATION UNDER THE LAWS OF THE STATE OF GEORGIA, *Appellant*, v. LOUISE G. KING, R. R. ROSBOROUGH AND LEE GRAHAM, *Appellees*.

1. The courts of one State do not take judicial notice of the laws of a sister State.

2. Chapter 4158 acts of 1893, authorizing foreign building and loan associations to do business in this State, does not relieve them from the general rule which requires that the validity of their contracts made in this State shall be tested by the laws applicable to domestic corporations of like character.

3. Under section 2208, Rev. Stats. of 1892, the bond of a married woman, and a mortgage given by her upon her separate real estate to secure a loan from a building and loan association, must be executed by the husband, in order to render same valid for any purpose, and a bond so given executed by the wife alone is void.

4. Under section 1981, Rev. Stats. of 1892, a deed absolute made for the purpose or with the intention of securing the payment of money is deemed to be merely a mortgage, and it may be enforced as such.

5. The record of a deed absolute or of a mortgage which does not state the amount or other particulars of a debt which on its face it purports to secure, is sufficient to put creditors and subsequent purchasers upon notice that the grantee has rights in the property conveyed, and upon inquiry as to the extent of those rights.

6. While married women can not make contracts of any kind that will bind them personally either at law or in equity, yet their agreements made for the benefit of their separate statutory property have never been regarded as absolutely void for all purposes, but, on the contrary, courts of equity have charged the separate property for money due thereon, and, as the agreements are valid to that extent, it is competent to secure the money due upon such agreements by mortgage upon the separate statutory property where the capacity to mortgage is conferred in general terms by statute, and the mortgage is duly executed and acknowledged in compliance with law, and the husband joins in such execution when required by the statute.

7. Under section 2, Article XI, constitution of 1885, which provides that "a married woman's separate real or personal property may be charged in equity and sold, or the uses, rents and profits thereof sequestrated * * * for money or thing due upon any agreement made by her in writing for the benefit of her separate property," a married woman's separate property can not be charged for money borrowed by her to pay off a valid incumbrance on her separate statutory property in the absence of an agreement made by her in writing.

8. A married woman with the knowledge and consent of her husband obtained a loan from a building and loan association of $1,200 for the purpose of paying off a valid purchase money mortgage then existing upon her separate statutory property, and the money so obtained was used for that purpose. The wife alone executed her bond to the building and loan association, and she and her husband duly executed and acknowledged a conveyance to the building and loan association of the separate statutory property of the wife, which though absolute in form expressed a consideration of $1,200, and contained a clause as follows: "This deed of conveyance is made by the parties of the first part as collateral for a loan and the party of the second part does agree that on payment of said loan good and sufficient title with limited covenants of warranty will be furnished to the parties of the first part, and the party of the second part has given its bond for the fulfillment of this agreement." The husband did not sign the bond, nor did he ever promise verbally or in writing to make himself personally responsible for the repayment of the loan. The mortgage deed contained no covenant to repay the loan upon which the husband could be held personally responsible for the debt. The loan was ob-

tained upon a written application signed by the wife which stated the amount of the loan, the purpose for which it was to be used, and that the loan was to be repaid. *Held,* that the mortgage deed was a valid security, and could be enforced in equity for the amount of such loan, though not for the bond which was void.

This case was decided by Division B.

Appeal from the Circuit Court for Alachua county.

## *Statement.*

On September 16th, 1891, appellee Louise G. King, who was then the wife of J. W. F. King, became the owner in fee simple of the land involved in this controversy by purchase from one Calvin Gillis. The deed from Gillis vests the title in Louise G. King as her separate statutory property and contains a recitation that she and her husband had mortgaged the same land to Gillis to secure payment of the purchase money. On the same day Louise G. King and her husband executed and acknowledged in proper form a mortgage to Gillis covering the same land, to secure the payment of $1,000, with interest therein stated to be due Gillis for purchase money of the land. Gillis filed his bill in equity to foreclose this mortgage in March, 1893. Pending this proceeding, in October, 1894, Louise G. King made written application to appellant, a foreign building and loan association, for a loan of $1,200. It was therein stated that she would transfer to the association certain shares of its capital stock held by her, as collateral until the loan was paid; that she would give her bond for the payment of installments due on stock, interest, etc., according to the rules, regulations and by-laws of the association; that she would also give a mortgage upon the property in controversy; that she bought the property in 1891, and had a warranty deed to same; that the property was her home; that it was encumbered by a mortgage for $1,200, and that she intended

using the money applied for to pay mortgage of $1,200. In her written affidavit attached to the application, she stated that she made the statements in the application for the purpose of obtaining a loan of money on the land therein described. In November, 1894, the application for loan was accepted, and during the following month, the sum applied for was paid to Gillis who satisfied and cancelled his mortgage of record and dismissed his foreclosure suit. Before the money was secured, however, Louise G. King made her bond to the association in the penal sum of $2,400, conditioned that she would pay in monthly installments $1.20 on each share, and at the same time in equal monthly installments interest at the rate of 6 per cent. per annum on the sum of $1,200, advanced by the association on twelve shares of stock held by her in the association until the series should terminate and mature pursuant to the charter, rules and by-laws of the association, as security for the loan, with a stipulation that when the series matured same sould be cancelled, the indebtedness paid and the bond become void. There were certain other stipulations in the bond, not necessary to be set out at length. At the same time Louise G. King and her husband executed and acknowledged in proper form a deed with full covenants of. warranty conveying to the association for the expressed consideration of $1,200, recited to have been paid to them by the association, the land in controversy, which deed was duly recorded in December, 1894. The deed contains a clause in the following language: "This deed of conveyance is made by the parties of the first part as collateral for a loan, and the party of the second part does agree that on payment of said loan, good and sufficient title with limited covenants of warranty will be furnished to the parties of the first part, and the party of the second part has given its bond for the fulfillment of this agreement."

On March 30, 1898, Louise G. King and her husband executed and delivered to appellee R. R. Rosborough their mortgage upon the property in controversy to secure pay-

ment of two promissory notes executed on the same day, which mortgage was recorded July 30, 1898.

On January 2, 1899, appellant filed its bill in the Circuit Court of Alachua county against Louise G. King, J. W. F. King, her husband, and R. R. Rosborough seeking foreclosure of its mortgage, but the bill did not allege that the loan was intended or used for the benefit of the separate statutory property of Louise G. King, but merely that a loan was made to her for which she gave bond, and that the mortgage was intended to secure the bond. Louise G. King and J. W. F. King demurred to this bill, and the court sustained the demurrer upon the ground that the bill was wanting in equity because the bond was signed by the married woman alone, in consequence of which the bond, as well as the mortgage given to secure it, was void. A petition for a rehearing was duly filed, which the court denied, whereupon appellant applied for leave to amend the bill. Leave was granted and the bill was amended so as to allege that the loan to Louise G. King was to enable her to pay off the Gillis mortgage upon the land which constituted her separate statutory property; that the loan was actually used for that purpose; that the mortgage deed was given to secure repayment of said loan; that the bond was given as additional security and was separate and distinct from the mortgage, and that the money due upon the mortgage, irrespective of any liability of Louise G. King upon the bond, was due and unpaid. This amended bill prayed that the mortgage deed be foreclosed for the amount due upon the bond, or if the bond should be held invalid, then for the sum loaned with interest. Louise G. King and J. W. F. King demurred to this amended bill, and the demurrer was overruled.

On January 22, 1900, after the amended bill was filed, Louise G. King and J. W. F. King, the husband, conveyed the property in controversy to appellee Lee Graham, who had notice of the mortgage to appellant, though it appears that when he purchased he knew that the court upon demur-

rer to the original bill had held the bond and mortgage void, and did not know that the bill had been amended.

On June 7, 1901, appellant by leave of court filed its amended and supplemental bill against Louise G. King, widow (her husband, J. W. F. King, having died), R. R. Rosborough and Lee Graham, praying foreclosure of the mortgage, and alleging the loan made in 1894 to Louise G. King upon her application therefor, the payment of the Gillis mortgage with the money so obtained, the execution of the bond by Louise G. King, the execution of the mortgage deed by Louise G. King and J. W. F. King, her husband, as security for the loan, the execution of the mortgage to Rosborough after the record of appellant's mortgage, the sale and conveyance of the property to Lee Graham pending the suit, and other matters not necessary to be stated with particularity. Answers were filed, testimony taken, and at the final hearing the bill was dismissed. From this decree the appellant entered its appeal. Without setting out the testimony at length it is sufficient to state that it shows very clearly and practically without contradiction, the facts as we have stated them.

Other facts are stated in the opinion.

*W. W. Hampton* for appellant.

*Evans Haile* for appellees.

Carter, P. J. (*after stating the facts*).—The conveyance to appellant, by Louise G. King and her husband, is executed and acknowledged with all the formalities required by our statutes regulating the conveyance of married women's property. It appears upon its face to be collateral to or security for a loan, and, therefore, under our statutes relating to mortgages, it must be construed to be a mortgage. The effort here is to foreclose it as a mortgage for the amount due upon the bond executed by Louise G. King, or if the bond be declared invalid, then for the amount of the

48 Fla.—17

loan made by appellant to Louise G. King to enable her to pay off a valid purchase money mortgage upon her separate statutory property.

We will first ascertain the validity of the bond. It contains a clause that "this obligation is a Georgia contract, and in all respects subject to and governed by the laws of Georgia." Appellant argues that as the bond purports to have been executed with reference to the laws of that State, its validity should be tested by those laws, and not by the laws of Florida. Without admitting that the rule contended for would apply in this case, it is sufficient to say that the court does not take judicial notice of the laws of a sister State, and there is no proof in this record that the bond is valid under the laws of Georgia. *Sammis v. Wightman,* 31 Fla. 10, 12 South. Rep. 526. Its validity must, therefore, be tested by the laws of this State, where the parties resided and executed it, and where it is sought to be enforced.

It has been frequently held by this court that in the absence of statute authorizing a married woman to make notes or bonds, her contracts of that nature are not binding upon her personally either at law or in equity. Section 2208, Revised Statutes, 1892, authorizes married women to hold stock in building and loan associations and to borrow money, and to execute a note or bond secured by mortgage upon her separate real estate to secure such loan, but expressly provides that the husband "must join in the execution of such note or bond and mortgage to give it validity." The appellant is a foreign building and loan association, but the statute authorizing it to engage in business in this State (chap. 4158, acts of 1893) does not relieve it from the general rule, which requires that the validity of its contracts made in this State must be tested by the laws applicable to domestic corporations of like character. *Skinner v. Southern Home Building & Loan Association,* 46 Fla. 547, 35 South. Rep. 67. The bond being executed by the married woman alone, is invalid under the statute above referred to, and even if the mortgage was intended as security for its per-

formance such mortgage can not be enforced as security for the installments upon stock, premiums, fines, etc., which the bond undertakes to require the married woman to pay. The mortgage deed purports on its face to have been given as collateral for a loan, not as security for performance of the conditions of the bond, or as security for the payment of the installments on stock, premiums, fines, etc. In the face of this statement in the mortgage deed, it is doubtful if the security could be extended to cover the installments, premiums, fines, etc., mentioned in the bond, as a part of or substitute for the loan mentioned in the mortgage deed, but it is not necessary to decide that question in view of our holding that the bond is invalid. The mortgage deed is executed and acknowledged by the married woman and by her husband, with all the formalities required by law, and it purports to have been given as collateral for a loan. A loan of $1,200 was in fact made to Louise G. King, with the knowledge and consent of her husband, for the benefit of her separate statutory property, and the money was actually used for the benefit of that property by payment of a valid purchase money mortgage constituting a lien thereon. There is no question of doubt from the testimony that the mortgage deed was executed for the purpose of securing repayment of that loan. Is it valid for that purpose? It will be observed that the mortgage deed states merely that it is "collateral for a loan," without stating the amount, the time when due, the purpose for which it was made or that a note, bond, or other writing had been given therefor. Is this sufficiently definite to enable appellant to make proof of the loan and to foreclose the mortgage deed for the amount due, as against Louise G. King, the maker of the instrument, R. R. Rosborough, a subsequent mortgagee, and Lee Graham, the subsequent purchaser of the property? We have no statute requiring a mortgage to state upon its face the precise amount of the debt, or the other matters above mentioned. Our recording statutes do not undertake to prescribe the contents of mortgages, but merely require them to be re-

corded in order to be effectual as against creditors or sub-
sequent purchasers for a valuable consideration and without
notice.    Section 1972, Rev. Stats. 1892.    Under section
1981, Rev. Stats. 1892, a deed absolute made for the purpose
or with the intention of securing the payment of money is
to be deemed merely a mortgage, and under repeated de-
cisions of this court it may be enforced as a mortgage for
the debt it was intended to secure, though no mention of the
debt is made in the instrument itself, and the evidence of
the debt rests in other writings or in parol only.   The record
of a deed absolute, or of a mortgage which does not state
the amount or other particulars of the debt which on its face
it purports to secure, is sufficient to put creditors and sub-
sequent purchasers upon notice that the grantee has rights
in the property, and upon proper inquiry those rights may
be ascertained.   If proper inquiry is made and the party is
misled or fails to ascertain the facts his rights may be su-
perior to those of the grantee, but there is no suggestion
in this case that either Rosborough or Graham made any
inquiry, or that they were in any way misled before or at
the time they accepted the mortgage in the one case, and the
deed in the other, from Louise G. King and her husband,
and they each acquired their rights long after the mortgage
deed to appellant was duly recorded.   Graham, it is true,
purchased the property after the court had sustained a de-
murrer to the original bill, but the bill was afterwards
amended, and, at the time he purchased, there had been no
final adjudication that the mortgage was invalid.    While
there is some conflict of authority upon the question as may
be seen by reference to 1 Jones on Mortgages, section 344,
we think that reason and the weight of authority sustain
the sufficiency of the description of the debt intended to be
secured by the mortgage deed in the present case.  *Michigan
Insurance Company of Detroit v. Brown,* 11 Mich. 265 ;
*Hurd v. Robinson,* 11 Ohio St., 232 ; *Curtis v. Flinn,* 46 Ark.
70 ;.*Nazro v. Ware,* 38 Minn. 443, 38 N. W. Rep. 359 ; 1

Jones on Mortgages, section 70, 343 *et seq;* Note 49 Am. St. Rep. 207.

Though the amount of the debt is not specified in this instrument it purports on its face to have been given in consideration of the sum of $1,200, lawful money paid by the grantee to the grantors and as collateral for a loan. We are not required to determine whether where the mortgage or deed given as security by a married woman does not state the amount intended to be secured, a debt exceeding the sum stated as the consideration can be proved by evidence dehors the mortgage itself, because here we hold on other grounds, that the mortgage deed can be enforced only for the amount of the loan, which is the same as the amount of the consideration expressed in the instrument. See *First National Bank of Florida v. Ashmead,* 33 Fla. 416, 14 South. Rep. 886.

J. W. F. King, the husband of Louise G. King, in no manner bound himself for the payment of the loan made by the association to his wife. He did not sign the application for the loan, nor did he ever promise either verbally or in writing to make himself personally responsible for the debt. On the contrary, it very clearly appears that he merely assisted his wife in obtaining the loan which was for the benefit of her separate property, and its repayment was intended to be secured by conveyances of her separate property alone. The mortgage deed contains no covenant to repay the loan upon which he could be held personally responsible. The question as to the validity of the mortgage under these circumstances is an interesting as well as a difficult one. Section 1956, Rev. Stats. 1892, provides that "any married woman owning real property may sell, convey or mortgage it as she might do if she were not married; *provided* her husband join in such sale, conveyance or mortgage." In *Hodges v. Price,* 18 Fla. 342, it was held that the promissory note of a married woman was void; that it was not effective to bind her person either at law or in equity; that her separate property could not be charged for the amount due upon her simple promissory note though a mortgage was

duly executed by her and her husband to secure it, where the bill for foreclosure of the mortgage did not allege that the amount so secured was the purchase money promised to be paid by her for the mortgaged property, nor contain other allegations showing that her separate property should be subjected to payment of the amount. In *Mattair v. Card,* 18 Fla. 761, the court held that a mortgage duly executed by husband and wife upon the property to secure a note signed by them both was valid. It was contended in argument that the note was void as to the wife and, as there were no allegations in the bill to show that her property should be charged, the mortgage could not be foreclosed. The court said as the note was signed by the husband it was *prima facie* valid as to him; that as the statute authorized the wife to sell, transfer and mortgage her real estate as if she were unmarried, her husband joining therein, it would seem to settle the question that she could bind her real estate to secure any valid indebtedness of herself and her husband. The cases of *Dollner, Potter & Co. v. Snow,* 16 Fla. 86, and *Hodges v. Price, supra,* were referred to and held not to apply to the circumstances of that case, the court remarking that the testimony and answers of defendants showed that the note and mortgage were given to secure the purchase price of property conveyed to the wife. The court said further: "The equitable rule is that any debt contracted by a married woman for the benefit of her separate estate or property is valid to the extent that it may be enforced out of any such estate or property whether expressly secured by mortgage or not." In *Dzialynski v. Bank of Jacksonville,* 23 Fla. 346, 2 South. Rep. 696, it was held that a mortgage upon a married woman's property duly executed by husband and wife to secure a joint and several note signed by them, was valid, though it appeared that the note was not given for the purchase price of the land, nor for money applied to or used for the improvement of the land or any of the separate estate of the wife, nor that the husband had any interest in the land. The case of *Hodges v. Price, supra,* was

referred to, the court saying: "As we understand that case, it decides that the promissory note of the wife, not joined in by the husband, considered without the aid of any allegations to show that it was given for a debt for which the law authorized her to charge her separate property, was a nullity." Referring to the statute authorizing married women to mortgage their property the court said: "There is no condition as to the nature of the debt for which she can mortgage her property and we see no reason why, when the husband joins in the mortgage and it is properly acknowledged and authenticated, the wife can not make a valid mortgage for the securing of any kind of debt that a person *sui juris* could."

The precise question we are now called upon to decide, *viz*: whether a mortgage duly executed by husband and wife upon the wife's separate statutory property, to secure repayment of money loaned the wife and used by her, for the benefit of her separate statutory property, where neither the husband nor any other person has made himself liable for the debt, is valid, has not been decided in this State, though it has been frequently held by this court that a married woman's separate statutory property may be charged in equity for the purchase price thereof and for debts contracted for its benefit, and the constitution of 1885 expressly provides (Sec. 2, Art. XI) that "a married woman's separate real or personal property may be charged in equity and sold, or the uses, rents and profits thereof sequestrated for the purchase money thereof; or for money or thing due upon any agreement made by her in writing for the benefit of her separate property; or for the price of any property purchased by her, or for labor and material used with her knowledge or assent in the construction of buildings, or repairs, or improvements upon her property, or for agricultural or other labor bestowed thereon with her knowledge and consent." While it is true that married women can not make contracts of any kind, except those expressly

authorized by statute, that will bind them personally either at law or in equity, yet their agreements made for the benefit of their separate statutory property have never been regarded as absolutely void for all purposes, but, on the contrary, courts of equity have charged the separate property for money due thereon, and, as the agreements are valid to that extent, we hold that it is competent to secure the money due upon such agreements by mortgage of the separate statutory property where the capacity to mortgage is conferred in general terms, as by our statute above quoted, and the mortgage is duly executed and acknowledged in compliance with law. The question is very thoroughly discussed in *Brookings v. White,* 49 Me. 479, and we fully approve the reasoning in that case. See, also, *Franklin v. Beatty,* 27 Miss. 347; *Pemberton v. Johnson,* 46 Mo. 342; *Damon v. Deeves,* 57 Mich. 247, 23 N. W. Rep. 798; *Gregory v. Van Voorst,* 85 Ind. 108; *Wolbach v. The Lehigh Building Association,* 84 Pa. St. 211.

It is contended, however, that the debt for the security of which this mortgage was given was one falling within the second clause of the constitutional provision quoted, "for money or thing due upon any agreement made by her in writing for the benefit of her separate property," and that there is no such agreement in writing in the present case as is contemplated by the constitution. Whether the mortgage alone is a sufficient writing we do not find it necessary to decide, but the written application for the loan taken in connection with the mortgage, answers, in the opinion of the court, every requirement of the constitution, as no particular form of the agreement required to be in writing is prescribed. Those instruments show a loan of $1,200 in money to Louise G. King for the purpose of paying off a mortgage upon her separate statutory property, and that she agreed to repay the money so borrowed. The mortgage deed is therefore valid and enforceable for the loan, though not for the bond, but no deficiency decree can

be entered against Louise G. King if the mortgaged property fails to sell for enough to pay the amount due upon the loan.

The decree of the Circuit Court will be reversed with directions to ascertain the amount due upon the loan of $1,200, with interest, less such sums as have been paid to appellant by Louise G. King for installments upon stock, premiums, fines and interest, and to enter a decree in favor of appellant foreclosing the mortgage deed and directing sale of the property to pay the sum found to be due.

SHACKLEFORD and WHITFIELD, JJ., concur.

TAYLOR, C. J., and COCKRELL, J., concur in the opinion.

HOCKER, J., being disqualified, took no part in the consideration of the case.